**STATE of Minnesota, Respondent,**

**v.**

**Charles Edward LINDSEY, Appellant.**

**No. C5–02–195.**

Court of Appeals of Minnesota.

Dec. 27, 2002.

Mike Hatch, Attorney General, St. Paul, MN; and Doug Johnson, Washington County Attorney, John W. Fristik, Assistant County Attorney, Stillwater, MN, for respondent.

· John M. Stuart, State Public Defender, Steven P. Russett, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by LANSING, Presiding Judge, SHUMAKER, Judge, and MINGE, Judge.

## OPINION

MINGE, Judge

On appeal from a conviction of first-degree assault of a correctional employee, appellant argues that the trial court committed plain error by instructing the jury that the state did not need to prove that he intended to inflict great bodily harm. Appellant also argues that the court erred by imposing a 20–year sentence when the presumptive sentence was 10 years. We affirm in part and modify in part.

## FACTS

A jury convicted appellant Charles Lindsey of assaulting correctional officers Jeff Warren and Grace Morton. The evidence at trial established that on April 30, 2000, Warren and Morton were assigned to Complex 1, one of several living units within the prison where appellant was serving a life sentence. At about 8:00 a.m., inmates began moving from the complex into the main prison yard for a recreation period. Before entering and leaving the yard, inmates are required to pass through a metal detector. When appellant passed through the metal detector, the alarm sounded. Warren stopped appellant and told him to go back through the metal detector. Appellant told Warren the alarm went off because appellant was wearing a metal knee brace. Warren asked appellant to remove the brace and then pass through the detector. After arguing with Warren, appellant removed his brace and passed through the detector without activating the alarm.

When appellant returned from the hour-long recreation period, he set off the metal detector alarm again. When Warren in-

structed appellant to remove the brace and go through the metal detector, appellant said "what?" in a loud voice and then hit Warren in the head. Warren was unconscious and next recalled lying on the ground and seeing appellant's foot coming down toward his face. Warren recalled trying to block the foot with his arm and then losing consciousness again.

Officer Morton was in the supply room when she heard a commotion near the metal detector. Morton ran around the corner and saw appellant punching and kicking Warren. Morton yelled at appellant to stop and ordered him to return to his cell. Appellant turned and hit Morton on the side of her head. He then continued hitting and kicking Warren in the head and torso. When Morton attempted to intervene a second time, appellant punched her in the chest.

The officer working in the security bubble observed the incident and called for assistance. According to that officer, appellant would walk away from Warren but return and continue the assault whenever Warren started to move.[1] As other correctional officers converged on the scene, appellant stopped his assault on Warren and waited to be taken into custody. Appellant eventually returned to his cell and was then escorted to a different complex.

Warren and Morton were taken to Lakeview Hospital in Stillwater and examined by Dr. Gene Stringer. Morton's injuries included a cut and swelling to her ear and bruises on her chest. She was discharged with instructions to rest and take pain medication as needed. Morton missed about seven weeks of work.

According to Dr. Stringer, Warren was oriented and recollected being assaulted.

He had a black eye, bruises on his face, arms and hands, and swelling to his neck and throat. A CT scan showed a possible fracture to the cricoid cartilage in Warren's trachea. Because Warren's airway was not compromised, Stringer did not admit Warren to the hospital. Stringer gave Warren medication to control the swelling and recommended he see an otolaryngologist the next day.

Otolaryngologist Bruce Dennison examined Warren the next day and determined that Warren had in fact suffered a fracture of the cricoid cartilage. Because the lining of Warren's windpipe had not been compromised, Dennison was able to conservatively treat the injury. Dennison told Warren to avoid excessive physical activity and monitored his progress over the next several weeks. Five months later, Warren returned to work part-time.

Dennison testified that Warren was "fortunate he was not killed." He explained that an injury like that suffered by Warren can cause swelling or bleeding and is "potentially lethal." In Dennison's professional opinion, Warren's injury created "a substantial risk of death or bodily harm," although Dennison acknowledged that risk never materialized. He testified that the injury to Warren's throat could have been inflicted by a fist or foot.

With regard to Officer Warren, the state charged appellant with first-degree assault of a correctional employee and third-degree assault resulting in substantial bodily harm. The state charged appellant with fourth-degree assault of a correctional officer resulting in demonstrable bodily harm for the assault of Morton. At trial, appellant conceded he was guilty of a fourth-degree assault but argued that the state

---

1. The incident was recorded by a camera in the complex. The videotape was introduced as an exhibit at trial and shown to the jury.

had not proven that he used deadly force against Warren. The jury found appellant guilty of all three charges. The court sentenced appellant to a 20–year prison term for first-degree assault and a consecutive year-and-a-day prison term for fourth-degree assault. Both sentences were consecutive to the life sentence appellant was already serving.

## ISSUES

1. Was the jury instruction on intent improper and, if so, is there a reasonable likelihood that the error in the instruction had a significant effect on the jury verdict?

2. Did the 20–year sentence exceed the presumptive sentence and, if so, was the sentence supported by significant aggravating circumstances?

## ANALYSIS

### I.

Appellant argues the court incorrectly instructed the jury. Specifically, appellant argues the trial court's comment on great bodily harm misstated the law, misled the jury, and requires a new trial.

■■■ Appellant did not object to the jury instruction at trial, so this court may only reverse if the instruction was misleading or confusing on fundamental points of law. *State v. Butler*, 295 N.W.2d 658, 659 (Minn.1980). This court may consider a plain error not previously brought to the attention of the trial court if the error affects substantial rights. Minn. R.Crim. P. 31.02. To establish plain error, an appellant must show that a trial court's ruling (1) was error; (2) that the error was plain; and (3) that the error affected appellant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998).

■■■ A jury instruction is in error if it materially misstates the law. *State v. Pen-*

*dleton*, 567 N.W.2d 265, 268 (Minn.1997). Jury instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988). District courts are allowed considerable latitude in the selection of language for jury instructions. *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986). But jury instructions must define the crime charged, and the court should explain the elements of the offense rather than simply read the statute. *Rosillo v. State*, 278 N.W.2d 747, 749 (Minn.1979).

Appellant was charged with first-degree assault for the use of deadly force against a peace officer or correctional employee. This part of the first-degree assault statute provides:

> Whoever assaults a peace officer or correctional employee by using or attempting to use deadly force against the officer or employee while the officer or employee is engaged in the performance of a duty imposed by law, policy, or rule may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $30,000, or both.

Minn.Stat. § 609.221, subd. 2(a) (1998). This part of the first-degree assault statute also incorporates by reference the definition in Minn.Stat. § 609.066, subd. 1 (1998), which states that deadly force is

> force which the actor uses with the purpose of causing, or which the actor should reasonably know creates a substantial risk of causing, death or great bodily harm.

Minn.Stat. § 609.221, subd. 2(c)(2) (1998).

To be guilty of using deadly force against a peace officer or correctional employee, a defendant must have the requisite mental state. The definition of deadly force uses two alternative phrases specifying the mental state. The first is "with the purpose of causing." This is actual

intent. *Compare* Minn.Stat. § 609.066, subd. 1 *and* Minn.Stat. § 609.02, subd. 9 (1998). The second mental state is found in the phrase "the actor should reasonably know creates a substantial risk of causing, death or great bodily harm." Minn.Stat. § 609.066, subd. 1. This is imputed knowledge. Thus, in a prosecution under Minn. Stat. § 609.221, subd. 2 (1998), the state must prove either that the defendant intended to cause great bodily harm or that the defendant reasonably should have known he created a substantial risk of causing great bodily harm. We have previously recognized this approach to mens rea. *See State v. Ortiz,* 626 N.W.2d 445, 450 (Minn.App.2001) (framing question of whether defendant committed first degree assault as "whether the evidence supports a finding that Ortiz used force by which he either intended to, or should reasonably have known would" cause great bodily harm), *review denied* (Minn. June 27, 2001).

In this case, the court instructed the jury that the prosecution had to prove

> the defendant used, or attempted to use, deadly force against Jeffrey Warren. 'Deadly force' means force that the actor uses with the purpose of causing or the actor should reasonably know creates a substantial risk of causing death or great bodily harm. 'Great bodily harm' means bodily harm that creates a high probability of death, causes serious permanent disfigurement, or causes a permanent or protracted loss or impairment of the function of any part of the body, or other serious bodily harm. It is not necessary for the state to prove that defendant intended to inflict great bodily harm, but only that defendant intended to commit the assault.

Appellant argues the last sentence, which provides that the prosecution did not have to prove that defendant intended to inflict great bodily harm, misstated the law.

The relatively new jury instruction on the charge of first-degree assault of a correctional employee tracks the language of the statute for first-degree assault of a correctional employee. 10 *Minnesota Practice,* CRIMJIG 13.06 (1999). However, the last sentence of the instruction used by the district court in this case picks up part of the pattern jury instruction for the similar but different crime of general first-degree assault. *See* 10 *Minnesota Practice,* CRIMJIG 13.04 (1999). The language in the pattern jury instruction that provides that the state does not have to prove intentional infliction of great bodily harm is based on *Johnson v. State,* 421 N.W.2d 327 (Minn.App.1988). *See* 10 *Minnesota Practice,* CRIMJIG 13.04 (1999). In *Johnson,* this court addressed the definition of assault and the wording of Minn.Stat. § 609.221, subd. 1. *Johnson,* 421 N.W.2d at 330. We held that Minn. Stat. § 609.221, subd. 1, does not require intent to inflict great bodily harm. *Johnson,* 421 N.W.2d at 331.

■ The offense at issue in this case is first-degree assault of a *correctional employee.* As compared to assault in the first degree, first-degree assault of a *correctional employee* requires the use of deadly force which, as just observed, incorporates by reference the alternative mental states from Minn.Stat. § 609.066, subd. 1. *Johnson* did not address the alternative mental states of Minn.Stat. § 609.066, subd. 1. If a district court determines that it is important to explain imputed knowledge to the jury, it should fashion language that focuses on whether the actor reasonably knew death or great bodily harm would result rather than use the sentence from the first-degree assault instruction that is based on *Johnson.* The question for the jury in an imputed-knowledge case is

whether, in looking at all the facts and circumstances in the case, the person committing the acts should reasonably have known that those acts created a substantial risk of causing death or great bodily harm. *Johnson* is correct; actual intent is not needed. The test of guilt in this case, however, is a reasonable person standard as to risk or foreseeability of outcome. In this case, the use of *Johnson* inspired part of the jury instruction, without more, was misleading because it emphasized what was not required of the state instead of explaining what the state had to prove to establish guilt.

▬ The plain-error test in the *Griller* case is not easily applied in this setting. It was error to use the wrong jury instruction. In this limited sense the first prong of the *Griller* test is met. The second prong of *Griller* requires that the error was plain. *Griller*, 583 N.W.2d at 740–41. To satisfy the second prong "it is sufficient that the error is plain at the time of the appeal." *Id.* at 741. For purposes of plain error, " '[p]lain' is synonymous with 'clear' or, equivalently, 'obvious.' " *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (citations omitted). In this case, the error is clear or plain if one assumes pattern jury instructions are narrow mandates. But trial courts have discretion to fashion instructions. In looking at the two first-degree assault crimes and our *Johnson* decision, it may be a difference without a significant substantive distinction. The critical analysis is the third prong of the three-part test.

▬ *Griller's* third prong requires that the error affected appellant's substantial rights. *Griller*, 583 N.W.2d at 741. This prong is satisfied if the error was prejudicial and affected the outcome of the case. *Id.* Plain error is prejudicial if there is a "reasonable likelihood that the giving

of the instruction in question would have had a significant effect on the verdict of the jury." *State v. Glidden*, 455 N.W.2d 744, 747 (Minn.1990). In this case, appellant conceded to assaulting the correctional employee, and according to appellant, "the only issue before the jury was whether appellant had the requisite mental state." That requisite mental state, from the plain meaning of the statute, is whether appellant used such force that he intended to cause, or should reasonably have known would create a substantial risk of causing great bodily harm. Minn.Stat. §§ 609.066, subd. 1, .221, subd. 2; *Ortiz*, 626 N.W.2d at 450.

▬ It does not appear from the record that the prosecution introduced evidence of appellant's actual intent at trial. The videotape of the assault was shown to the jury. Based on the stipulated description of the attack in the parties' briefs, we find that a jury fully instructed on imputed knowledge would have concluded that appellant had the requisite mental state. Appellant *should* reasonably have known his action would create a substantial risk of causing death or great bodily harm. He inflicted a severe beating on Officer Warren. Based on the nature of the attack, he should have known there was a risk of great bodily harm. This is imputed intent and meets the statutory requirement. *See* Minn.Stat. § 609.066, subd. 1. Under the circumstances, telling the jury it did not need to find actual intent to inflict great bodily harm was not incorrect and was offset by the part of the instruction that defined deadly force as force the actor uses with the purpose of causing or force the actor should reasonably know creates a substantial risk of causing death or great bodily harm. Although the jury instruction given may have been plain error by emphasizing a lower threshold of proof of mental state, and in some cases could be

confusing, it did not adversely affect the appellant's substantive rights, and we therefore affirm the conviction in this case.

## II.

Appellant was sentenced to a 20–year sentence for the assault. The statute provides for a 10–year minimum and a 20–year maximum sentence. The parties agree that sentencing guidelines provide for a 10–year sentence in this case. Appellant argues the 20–year sentence is an improper upward departure from the sentencing guidelines. The state argues the 20–year sentence was a justified departure from the sentencing guidelines because the statute allows for the maximum sentence of 20 years. The state contends the statutory maximum sentence prevails over the sentencing guidelines.

 The sentences in the sentencing guidelines are presumed appropriate for every case. Minn. Sent. Guidelines II.D. Sentencing courts should use the presumptive sentence from the sentencing guidelines unless the particular case involves "substantial and compelling circumstances." *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981); Minn. Sent. Guidelines II.D. If the trial court finds that aggravating or mitigating circumstances are present, however, the trial court has broad discretion to depart from a presumptive sentence. *State v. Best,* 449 N.W.2d 426, 427 (Minn.1989). A reviewing court should overturn only when the trial court exceeds its discretion in setting the sanction. *State v. Schantzen,* 308 N.W.2d 484, 487 (Minn.1981).

 "[I]f no reasons for departure are stated on the record at the time of sentencing, no departure will be allowed." *Williams v. State,* 361 N.W.2d 840, 844 (Minn.1985). If reasons for departure are stated, the reviewing court must examine the record to determine if the reasons

given justify the departure. *Id.* at 844. If the reasons are improper or inadequate, but there is sufficient evidence in the record to justify departure, the departure should be affirmed. *Id.*

 The analysis of an appellant's challenge to an upward departure begins with a focus on appellant's conduct. *State v. Valentine,* 630 N.W.2d 429, 435 (Minn. App.2001), *review denied* (Minn. Aug. 22, 2001).

> As set forth by the Minnesota Supreme Court, a sentencing court's durational departure is justified if a defendant's *'conduct* somehow may be said to be significantly more serious than typically involved in the commission of' the charged offense.

*State v. Valentine,* 630 N.W.2d at 435–36 (quoting *State v. Best,* 449 N.W.2d at 427.)

At the sentencing hearing in this case, the prosecutor informed the judge that the sentence, according to Minn.Stat. § 609.221, subd. 2, could be anywhere between 10 years and 20 years. The judge imposed the 20–year (240 month) sentence and commented:

> Court's going to the max on the statute. I don't think this is a departure. * * * I remember the trial; I observed it on the videotape. This was a brutal, senseless beating of these two correction officials for absolutely no justification whatsoever. * * * I don't know, he lost it, and he brutally beat these two people without any warning whatsoever. I have no feeling of any kind of compassion for this man whatsoever under these circumstances. So, I'm going to sentence him to the statute maximum, 240 months on that charge, 240.

Appellant argues that the sentencing judge's statements should not be construed as stated reasons for a departure because the judge did not believe he was departing.

Alternatively, appellant argues that if the judge's statements are considered reasons for departure, they are insufficient.

■ The sentencing judge commented on the senseless and unjustified nature of the assaults as well as the overall brutality of the assaults. While the brutality of an assault can be considered in making an upward sentencing departure, the brutality must be significantly more serious than conduct typically involved in that type of assault. *See State v. Felix*, 410 N.W.2d 398 (Minn.App.1987) (imposing double the presumptive sentence where the "assault was particularly vicious and torturous in that the victim lost consciousness early and repeatedly was beaten by the defendant"), *review denied* (Minn. Sept. 29, 1987).

■ Appellant assaulted the correctional employee by punching and kicking him. That conduct is not significantly more serious than conduct typically involved in first-degree assault. Though we agree with the sentencing judge that this assault was senseless, unjustified, and brutal, we also agree with appellant that by its very definition, any first-degree assault involving deadly force is senseless, unjustified, and brutal. Those factors have already been accounted for in the statute and sentencing guidelines.

It is not clear that the sentencing judge was attempting to state reasons for a departure. Because the conduct in this case is common to assaults of this severity, it does not support such a departure, and we need not determine whether the sentencing judge failed to state any reasons for a departure or whether the sentencing judge stated insufficient reasons for a departure.

■ The state argues the sentence in this case is not a departure from the sentencing guidelines because Minn.Stat. § 609.221, subd. 2, allows for a maximum sentence of 20 years. The state contends the statute takes precedence over the 10–year presumptive sentence. The state cites *State v. Rachuy* and *State v. Halvorson* to support its argument. *State v. Rachuy*, 502 N.W.2d 51 (Minn.1993); *State v. Halvorson*, 506 N.W.2d 331 (Minn.App. 1993). The state appears to be arguing that any time a statute has a maximum sentence that is longer than the presumptive sentence, the sentencing judge may elect to impose the maximum sentence. *Halvorson* and *Rachuy* do not support this proposition. In both cases, the court had specific statutory authority to impose a sentence greater than the presumptive sentence even in the absence of substantial and compelling circumstances. *Rachuy*, 502 N.W.2d at 52; *Halvorson*, 506 N.W.2d at 338–39. The statute at issue in this case, Minn.Stat. § 609.221, subd. 2, does not authorize a sentencing judge to impose a sentence greater than the presumptive sentence absent significant aggravating circumstances. Accordingly, we do not find the state's argument persuasive. We modify appellant's sentence to the 10–year presumptive sentence.

## DECISION

Because appellant cannot meet the third prong of the *Griller* plain-error test, we affirm his conviction. Because the sentencing judge made an improper upward departure, we modify the sentence to the 10–year maximum sentence provided for in the sentencing guidelines.

**Affirmed as modified.**