STATE of Minnesota, Respondent,

v.

**Kenneth Conrad CONGER, Jr., Appellant.**

No. A03–1771.

Court of Appeals of Minnesota.

Oct. 12, 2004.

Mike Hatch, Attorney General, Tibor M. Gallo, Assistant Attorney General, St. Paul, MN; and Earl E. Maus, Cass County Attorney, Courthouse, Walker, MN, for respondent.

Melissa V. Sheridan, Assistant State Public Defender, Eagan, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; ANDERSON, Judge; and PARKER, Judge.*

## OPINION

PETERSON, Judge.

Appellant Kenneth Conrad Conger, Jr. pleaded guilty to one count of aiding and abetting second-degree intentional murder and two counts of aiding and abetting second-degree unintentional murder. The district court sentenced appellant on the intentional-murder count to a 420–month prison term, which is a 114–month upward durational departure from the presumptive sentence of 306 months. Appellant chal-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

lenged his sentence in an appeal to this court, arguing that the durational departure was an abuse of the district court's discretion because appellant's offense did not involve substantial and compelling circumstances. After the parties submitted their briefs, the United States Supreme Court issued its decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). This court granted the parties leave to file supplemental briefs addressing the impact of *Blakely* on appellant's sentence. Because we conclude that appellant's right to a jury trial was violated when the district court imposed the upward departure, we reverse and remand for resentencing.

### FACTS

Following the death of Brian Jenny, and pursuant to a plea agreement, appellant pleaded guilty to one count of aiding and abetting second-degree intentional murder in violation of Minn.Stat. §§ 609.19, subd. 1(1), 609.05, subd. 1 (2002), and two counts of aiding and abetting second-degree unintentional murder while committing robbery and kidnapping in violation of Minn. Stat. §§ 609.19, subd. 2(1) (2002), 609.05, subd. 1.

At his guilty-plea hearing, appellant admitted the following facts:

During the evening of October 4, 2002, appellant partied with several people, including Stephanie Losh, Stephanie Day, and Leah Harper–Jenkins, at a resort in Federal Dam, where they met the victim, Brian Jenny, and Jenny's brother-in-law, David Matzke. Jenny and Matzke invited appellant and his friends into their cabin to party with them. When the group ran out of beer, appellant and Jenny left the cabin to walk to the resort bar to buy more beer.

When appellant heard someone following them, he turned and saw Harper–Jenkins dragging a baseball bat. Appellant left Jenny with Harper–Jenkins and returned to the cabin to get more money for beer from his friends. When appellant arrived at the cabin, Matzke asked where Jenny was, and appellant pointed out the door toward Jenny's general location. As appellant was walking out of the cabin, Matzke went back inside and then came out with a gun. Matzke started waving the gun around and asking where Jenny was. Appellant ran and got into a car that Losh and Harper–Jenkins were in, and Losh drove to appellant's uncle's house, where appellant told his uncle what had happened and asked his uncle for a gun because appellant was scared.[1] The group returned to the cabin, and appellant saw Matzke still running around with the gun. The group then drove to the Federal Dam bridge, and appellant started walking back from there toward the cabin. Appellant saw Losh and Harper–Jenkins in a car at the resort bar and met up with them at the bar. Appellant got into the hatchback car with Losh and Harper–Jenkins, and they started driving back to the cabin. On the way, they saw Jenny lying on the ground, and they stopped. Harper–Jenkins told appellant to help get Jenny in the trunk, and the two of them put Jenny in the back portion of the hatchback. Appellant could not tell whether Jenny was alive, but he knew that Jenny was severely hurt. They drove toward appellant's home, and, along the way, they stopped, and Harper–Jenkins told appellant to help her get Jenny out of the car. They took Jenny from the car and left him by the side of the road. Jenny later died from his injuries. Appellant rode with Day to Burnsville, and the next day, after learning that the police wanted him for questioning, he went to the

---

1. There is nothing in the record that indicates that appellant's uncle gave appellant a gun.

Burnsville Police Department and gave a statement, and the police took him into custody.

Appellant testified at the plea hearing that he did not strike Jenny with the bat and that it was Harper–Jenkins who beat Jenny. Appellant testified that when he saw Harper–Jenkins for the first time after leaving her with Jenny, she told appellant, "That mother f—ker cut me, so I done him in." Appellant acknowledged that his testimony was contrary to statements made by Losh and Harper–Jenkins, who both claimed that appellant hit Jenny with the baseball bat. Appellant maintained that the only things that he did wrong were helping to load Jenny into the car, taking Jenny out of the car, and failing to call for help.

The court sentenced appellant to 420 months in prison, which is an upward departure from the presumptive guidelines sentence of 306 months.[2] The court stated that the departure was based on four aggravating factors: (1) the victim was particularly vulnerable; (2) the victim was treated with particular cruelty; (3) the victim was left without medical care; and (4) there was a conscious concealment of the body in a ditch in temperatures at or near freezing while the victim was still alive. The court found that appellant's account of his involvement in the offense was not credible.

Appellant initially appealed his sentence arguing that because his offense did not involve substantial and compelling circumstances, the district court abused its discretion by imposing an upward departure. After the parties submitted briefs, the United States Supreme Court issued its decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). This court granted the state's mo-tion for supplemental briefing to address the impact of *Blakely* on appellant's sentence.

## ISSUE

Did the district court violate appellant's right to a jury trial under the Sixth Amendment to the United States Constitution when it imposed an upward durational departure from the presumptive, fixed sentence established by the Sentencing Guidelines Commission for appellant's offense?

## ANALYSIS

■ Appellant argues that under *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the district court violated his right to a jury trial by departing from the presumptive guidelines sentence based on findings of fact that were not made by a jury, and, therefore, his sentence must be reversed and his case remanded for imposition of a sentence that does not exceed the maximum sentence in the sentencing guidelines presumptive-sentence range.

In *Blakely*, the United States Supreme Court considered whether the State of Washington's sentencing procedure deprived the defendant of his Sixth Amendment right "to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence." *Id.* at 2536. Following an incident that involved his wife and son, the defendant in *Blakely* pleaded guilty to second-degree kidnapping involving domestic violence and use of a firearm. *Id.* at 2534–35. In his guilty plea, the defendant admitted the elements of second-degree kidnapping and the domestic-violence and firearm allegations, but he did not admit any other relevant facts. *Id.* at 2535.

---

**2.** The presumptive guidelines sentence is based on appellant's criminal history.

Under the Washington criminal code, second-degree kidnapping was a class-B felony that carried a maximum statutory sentence of ten years, but the Washington Sentencing Reform Act further limited the sentencing range to 49–53 months and permitted a judge to impose a sentence above that range only upon finding "substantial and compelling reasons justifying an exceptional sentence." *Id.* at 2535. After hearing the victim's description of the kidnapping, the judge imposed an "exceptional sentence" of 90 months on the ground that the defendant acted with deliberate cruelty, a statutorily enumerated ground for departure under the Washington Sentencing Reform Act. *Id.* The defendant objected, and after conducting a hearing that included testimony from the defendant, the defendant's wife and son, a police officer, and medical experts, the judge made findings of fact and adhered to his determination of deliberate cruelty. *Id.* at 2535–36. The defendant appealed, arguing that the Washington sentencing procedure deprived him of his federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence. *Id.* at 2536.

The Supreme Court agreed and explained that when, in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), it expressed the rule that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt,' " *Blakely,* 124 S.Ct. at 2536 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435), the prescribed statutory maximum meant

the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority.

*Id.* at 2537 (citations and quotation omitted) (emphasis in original).

The Supreme Court determined that the facts that supported the judge's finding that the defendant acted with deliberate cruelty were neither admitted by the defendant nor found by a jury. *Id.* Therefore, because the judge could not have imposed the "exceptional sentence" solely on the basis of the facts admitted in the guilty plea, the Supreme Court held that the Washington sentencing procedure did not comply with the Sixth Amendment to the United States Constitution, and the defendant's sentence was invalid. *Id.* at 2537–38.

The state argues that because the sentencing guidelines promulgated by the Minnesota Sentencing Guidelines Commission operate differently from the legislatively enacted sentencing guidelines in effect in Washington state, the Minnesota sentencing guidelines are not affected by the Supreme Court's decision in *Blakely.*

The sentencing guidelines promulgated by the Minnesota Sentencing Guidelines Commission establish:

(1) The circumstances under which imprisonment of an offender is proper; and

(2) A presumptive, fixed sentence for offenders for whom imprisonment is proper, based on each appropriate combination of reasonable offense and offender characteristics. The guidelines may provide for an increase or decrease

of up to 15 percent in the presumptive, fixed sentence.

Minn.Stat. § 244.09, subd. 5 (2002).

The state contends that unlike the Washington sentencing guidelines, the Minnesota sentencing guidelines are not mandatory but merely "advisory to the district court." *Id.* The state also contends that unlike the Washington statute, the Minnesota sentencing statute explicitly states that "[s]entencing pursuant to the sentencing guidelines is not a right that accrues to a person convicted of a felony; it is a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing." *Id.* According to the state, these differences demonstrate that the Minnesota sentencing guidelines "do no more than fetter the discretion of sentencing judges to do what they have done for generations—impose sentences within the broad limits established by the Minnesota legislature."

But the state candidly acknowledges that although the sentencing guidelines are advisory to the district court, the sentencing statute provides that "the court *shall* follow the procedures of the guidelines when it pronounces sentence in a proceeding to which the guidelines apply by operation of statute." Minn.Stat. § 244.09, subd. 5 (emphasis added). Under the procedures of the guidelines, "[w]henever a person is convicted of a felony, the court, upon motion of either the defendant or the state, shall hold a sentencing hearing" to permit the parties "to prepare and present arguments regarding the issue of sentencing." Minn.Stat. § 244.10, subd. 1 (2002). The Minnesota sentencing statute further provides that:

> Whether or not a sentencing hearing is requested ... the district court *shall* make written findings of fact as to the reasons for departure from the sentenc-

ing guidelines in each case in which the court imposes or stays a sentence that deviates from the sentencing guidelines applicable to the case.

Minn.Stat. § 244.10, subd. 2 (2002) (emphasis added). " 'Shall' is mandatory." Minn.Stat. § 645.44, subd. 16 (2002).

Therefore, even though the sentencing guidelines are advisory to the district court, and a person convicted of a felony does not have a right to receive the presumptive, fixed sentence established by the Sentencing Guidelines Commission for that person's offense, a district court that does not impose the presumptive, fixed sentence is required to make findings of fact that support the court's reasons for departing from the presumptive sentence. This means that under the Minnesota sentencing procedures, the applicable presumptive, fixed sentence established by the Sentencing Guidelines Commission is the maximum sentence that a judge may impose without finding facts that support a departure, and a judge who imposes an upward durational departure must do so in a manner that complies with the Sixth Amendment to the United States Constitution as explained in *Blakely*.

 Under *Blakely*, when a judge relies upon a fact other than the fact of a prior conviction to impose a sentence that is greater than the maximum sentence that the judge may impose without relying on that fact, the fact must be found by a jury or admitted by the defendant. Consequently, when a judge imposes an upward durational departure from the presumptive, fixed sentence established by the Sentencing Guidelines Commission, the judge's reasons for departing must be supported by facts that were found by a jury or admitted by the defendant. When a defendant pleads guilty, as appellant did, any upward durational departure that is not based solely on the facts admitted in

the guilty plea does not comply with the Sixth Amendment to the United States Constitution and is invalid.

The district court held a sentencing hearing where it heard arguments regarding appellant's sentence, and following the hearing, the court imposed a 420–month sentence and stated on the record:

> This is a departure from the sentencing guidelines based on the following aggravating factors:
>
> One, that the victim was particularly vulnerable;
>
> Two, that he was treated with particular cruelty; and
>
> Three, that he was left without medical care; and
>
> Four, that there was a conscious concealment of the body. The concealment of the body being in the ditch in temperatures at near freezing while he was still alive.

The district court reiterated these reasons for the departure in a written departure report.

Only one of the aggravating factors cited by the district court as a reason for departing from the sentencing guidelines is based solely on facts admitted by appellant in his guilty plea. Appellant admitted that he took Jenny out of the car and left him by the side of the road without calling for help. This admission provides a basis for the district court's finding that appellant left Jenny without medical care.[3] But we have not found any fact admitted by appellant that provides a basis for the district

court's finding that appellant consciously concealed the victim's body in a ditch at near-freezing temperatures while the victim was still alive. Appellant did not admit that he consciously concealed Jenny's body while Jenny was still alive. Appellant admitted only that he left Jenny by the side of the road and he could not tell whether Jenny was alive. Jenny was later discovered alive, which conclusively proves that he was alive when appellant left him, but it does not prove that appellant consciously concealed Jenny or was conscious of the fact that Jenny was alive.

The district court made no findings of fact that support its determinations that the victim was particularly vulnerable and that the victim was treated with particular cruelty; the court simply stated in conclusory fashion that particular cruelty and particular vulnerability are reasons for departing.[4] Without any findings of fact that support the district court's determinations of particular cruelty and particular vulnerability, we cannot determine whether these reasons for departing are supported by facts admitted by appellant in his guilty plea.

Therefore, we reverse appellant's sentence and remand to the district court for resentencing. When resentencing appellant, any reason that the district court relies upon as a basis for departing from the presumptive, fixed sentence established by the Sentencing Guidelines Commission must be based solely on facts admitted by appellant in his guilty plea.

---

**3.** It is not clear why the district court concluded that leaving Jenny without medical care distinguishes appellant's offense from other second-degree intentional murder offenses.

**4.** It is possible that the district court's determinations that appellant left Jenny without medical care and consciously concealed Jen-

ny in a ditch at near-freezing temperatures while Jenny was still alive were intended to be fact findings to support the court's determination that appellant treated Jenny with particular cruelty, but because the district court described each of the determinations as an aggravating factor, we cannot conclude that this is what the district court intended.

## DECISION

Because the reasons that the district court relied upon as bases for departing from the presumptive, fixed sentence established by the Sentencing Guidelines Commission were not based solely on facts admitted by appellant in his guilty plea, the procedure used when sentencing appellant did not comply with the Sixth Amendment to the United States Constitution, and appellant's sentence is invalid.

**Reversed and remanded.**