**STATE of Minnesota, Respondent,**

v.

**Shane Michael PETSCHL, Appellant.**

No. A031803.

Court of Appeals of Minnesota.

Nov. 23, 2004.

Mike Hatch, Attorney General, St. Paul.

Donald F. Ryan, Crow Wing County Attorney, John Sausen, Assistant County Attorney, Brainerd, for respondent.

Rachael Goldberger, Strauss & Goldberger, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; PETERSON, Judge; and HUDSON, Judge.

## OPINION

HUDSON, J.

Appellant argues that (1) his counsel was ineffective for not clearly explaining to appellant that the district court could impose an upward departure regardless of the state's agreement not to seek an upward departure; (2) the district court erred in sentencing appellant without considering the results from a court-ordered neuropsychological examination; (3) the district court abused its discretion in granting a double upward departure; and (4) he was denied due process. The postconviction court rejected appellant's claims. At oral argument, the parties were granted leave, at appellant's counsel's request, to file supplemental briefs addressing the impact of *Blakely v. Washington*, — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); and specifically whether *Blakely* applies retroactively to appellant's conviction. Because *Blakely* does not apply retroactively in this case, and because the postconviction court did not abuse its discretion in denying appellant's postconviction petition, we affirm.

## FACTS

Appellant Shane Michael Petschl was charged with first-degree assault for putting a blanket over his three-week old son's head and punching him. Petschl pleaded guilty to first-degree assault in exchange for the state's agreement not to seek an upward departure. At the plea hearing, the district court judge asked appellant if he understood that the district court could still depart upward from the sentencing guidelines, even though the state had agreed not to seek an upward departure. Appellant acknowledged that the decision to upwardly depart was the district court's sole prerogative.

The district court ordered a presentence investigation and a psychological evaluation, and the presentence investigation recommended an upward departure. On July 21, 1997, the district court sent a notice to the county attorney and appellant's counsel informing them that it was considering a departure from the sentencing guidelines. Appellant contends, however, that his counsel never informed him of the court's notice.

After receiving the results of the psychological exam on October 30, 1997, the district court ordered an additional independent neuropsychological examination to determine whether a 1991 head injury suffered by Petschl had resulted in his diminished capacity. The order stated that the examination was to be completed within 30 days. The examination was performed on November 17, and December 5, 1997, but the results were not filed with the district court until December 18, 1997, a week after sentencing. The district court sentenced appellant without reviewing the examination report. Appellant's attorney did not object to the district court's decision to proceed with sentencing without reviewing the report.

On December 11, 1997, the district court sentenced appellant to a 196–month commitment; a double upward departure from the presumptive 98–month sentence. In support of the departure, the district court discussed philosophical reasons for sending people to prison, stating that someone should be incarcerated for criminal conduct: as a deterrent to others, to punish the offender, for rehabilitation of the offender, and for public safety. The district court stated that all of these factors applied to appellant. Further, the district court noted that appellant had a prior record and that the victim was vulnerable. The district court concluded by stating that it accepted the rationale and recommendations of the presentence investigation.

On January 24, 2003, appellant filed a petition for postconviction relief. At the postconviction evidentiary hearing, appellant's trial attorney, Charles Halverson, testified that he did not believe it was likely that appellant would get an upward departure, and that this was his only case where the judge indicated that he was considering a departure, and then actually departed. Halverson testified that he did not remember if the judge ordered a neuropsychological examination. After the hearing, Halverson submitted an affidavit stating that after he listened to the entire postconviction hearing, he recalled that the sentencing judge had ordered an independent neuropsychological examination. Halverson also stated in the affidavit that he should have objected when the judge decided to proceed with sentencing without the report and that his failure to object constituted ineffective assistance of counsel.

Appellant testified at the postconviction hearing that he believed he was going to get the presumptive sentence of 98 months or maybe a downward departure with a "slight possibility" of an upward departure. Appellant further testified that he gave up his right to trial in order to avoid an upward departure; he knew an upward departure was possible, but his counsel led him to believe that the court would not upwardly depart. Appellant testified that he did not see the notice from the judge stating that he was considering seeking an upward departure.

The district court denied appellant's petition for postconviction relief. This appeal follows.

## ISSUES

I. Was appellant denied effective assistance of counsel?

II. Does *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) apply retroactively on collateral review of appellant's conviction?

III. Did the district court abuse its discretion in granting a double upward departure from the presumptive sentencing guidelines?

IV. Was appellant denied due process?

## ANALYSIS

### I

First, appellant argues that his counsel was ineffective because his counsel advised him to enter into the plea agreement without a guarantee that the district court would not upwardly depart at sentencing. Appellant argues that his counsel "should have made it part of the deal that there would not be an upward departure or appellant could withdraw the plea." Additionally, appellant contends that his counsel's failure to object to the district court's decision to sentence without the results of the neuropsychological report constitutes ineffective assistance of counsel. We conclude that neither of appellant's claims constitute ineffective assistance of counsel.

Appellate courts "review a postconviction court's findings to determine whether there is sufficient evidentiary support in the record." *Dukes v. State,* 621 N.W.2d 246, 251 (Minn.2001). Appellate courts "afford great deference to a district court's findings of fact and will not reverse the findings unless they are clearly erroneous. The decisions of a postconviction court will not be disturbed unless the court abused its discretion." *Id.* (citation omitted).

In determining whether to grant a defendant a new trial on the ground of ineffective assistance of counsel, the Minnesota Supreme Court adopted the two-part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Gates v. State,* 398 N.W.2d 558, 561 (Minn. 1987). First, the burden is on the petitioner to affirmatively prove that counsel's representation fell below an objective standard of reasonableness. *Id.* at 561. "[A]n attorney acts within the objective standard of reasonableness when he provides his client with the representation of an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under the circum-

stances." *State v. Doppler,* 590 N.W.2d 627, 633 (Minn.1999) (quotation omitted). "There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Pierson v. State,* 637 N.W.2d 571, 579 (Minn.2002) (quotation omitted).

Second, for a claim of ineffective assistance of counsel to stand under *Strickland,* the defendant must show that counsel's errors actually had an adverse effect and that but for the errors, there is a reasonable probability that the result of the proceeding would have been different. *Gates,* 398 N.W.2d at 561. This court may dispose of an ineffective-assistance claim when the appellant fails to prove that there was a reasonable probability the outcome would have been different. *Id.* at 563; *see also Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069–70.

The postconviction court concluded that appellant was aware at the time of his plea that the plea agreement did not bind the district court at sentencing and, therefore, the district court could upwardly depart from the guidelines. Further, the district court concluded that its July 21, 1997 notice that it may depart upward did not contain any new information. Thus, as the postconviction court correctly noted, even if appellant's counsel failed to show him the notice, it "was not an omission outside the wide range of professionally competent assistance, since [appellant] was already aware that the Court could consider an upward departure."

Moreover, at the guilty-plea hearing, the district court asked appellant: "[a]lthough the agreement has been that the State would not ask for an upward departure, you still realize that a court can upward depart from the Sentencing Guidelines?" Appellant replied affirmatively. The court asked appellant three follow-up questions,

ensuring that he understood the court could depart. Appellant again replied affirmatively, and the court accepted appellant's guilty plea. Appellant testified at the postconviction hearing, and argues to this court, that had he known the district court would upwardly depart, he would not have pleaded guilty. But the exchange appellant had with the court directly contradicts that testimony. Further, at the postconviction hearing, he admitted that he knew there was a "slight chance" that the court could upwardly depart. Therefore, we conclude that the second *Strickland* prong disposes of appellant's claim of ineffective assistance of counsel because appellant knew he might face an upward departure when he pleaded guilty, and thus has failed to show that there is a reasonable probability that the outcome would have been different.

■ Likewise, appellant was not prejudiced by the district court's failure to review the neuropsychological report before sentencing appellant. At sentencing, the district court had before it a nine-page psychosocial assessment, a three-page neuropsychological report, and the testimony of appellant's treating psychologist; thus the sentencing court was well-informed of appellant's psychological condition. Second, the postconviction court noted the report concluded that appellant was not "afflicted by brain injury entailing diminished capacity," and that the "crime is not attributed to brain dysfunction." Our independent review of the report confirms that it contained no findings to support appellant's diminished-capacity claim. Indeed, the evaluator stated that there was no current indication of brain dysfunction, and "no reason to suppose otherwise respecting his status at the time of his crime." On these facts, we conclude that appellant was not prejudiced by his attorney's failure to object to the district court's

failure to review the report prior to sentencing. Therefore, we affirm the postconviction court's conclusion that appellant was not denied effective assistance of counsel.

For the same reason, appellant's related argument that the district court erred by failing to review his neuropsychological report before sentencing also fails. Again, the postconviction court concluded that it was not error for the district court to sentence appellant without reviewing the report because the report concluded that appellant was not "afflicted by brain injury entailing diminished capacity" and that the "crime is not attributed to brain dysfunction." Thus, the district court's failure to review the report prior to sentencing appellant was, at most, harmless error. Accordingly, we affirm the postconviction court's denial of appellant's petition.

## II

Next, appellant argues that the district court erred by imposing a double durational departure of 196 months in violation of *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

■ After briefing in this appeal was completed, the United States Supreme Court issued an opinion in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *Blakely*, the Supreme Court applied the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000), which states that any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. *Blakely*, 124 S.Ct. at 2536. Under *Blakely*, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at

2537. Therefore, any sentencing departures that are based on the judge's findings, rather than those of the jury, are invalid under the Sixth Amendment. *Id.* at 2538. In addition, this court has recently held that durational departures under the Minnesota Sentencing Guidelines are subject to *Blakely's* holding that the Sixth Amendment requires the jury to make the findings supporting an increase in sentence. *State v. Conger*, 687 N.W.2d 639, 644 (Minn.App. Oct.12, 2004).

Like the sentencing departure in *Blakely*, the upward departure in appellant's sentence is not based solely on facts reflected in a jury verdict or admitted by appellant; it is based on the district court's determination that the evidence proved several specific aggravating factors. Thus, at oral argument in this matter, appellant's counsel requested leave to submit a supplemental brief addressing the impact of *Blakely*. But, given that appellant was convicted and sentenced in 1997, this court questioned whether *Blakely* applies retroactively to appellant's 1997 sentence, and instructed the parties to submit supplemental briefs on that issue. After reviewing the parties' supplemental briefs, we conclude that *Blakely* does not apply retroactively in this case.

The determination of whether a decision applies retroactively or nonretroactively is a legal question that we review de novo. *State v. Costello*, 646 N.W.2d 204, 207 (Minn.2002). Here, we first note that a petition for postconviction relief is a collateral attack on a conviction. *Meemken v. State*, 662 N.W.2d 146, 148 (Minn. App.2003). The *Meemken* court made clear that the rule announced in *Apprendi* does not retroactively apply to collateral challenges. *Id.* at 150.

But appellant argues that his postconviction appeal was not a collateral attack on his conviction because his postconviction appeal was his first challenge to the upward durational departure. Thus, appellant claims, he is entitled to benefit from *Apprendi* and *Blakely*. But appellant's argument is misplaced because he filed his postconviction petition long after his conviction became final. *See Hummel v. State*, 617 N.W.2d 561, 563 (Minn.2000) (holding postconviction petition is collateral attack on the conviction); Minn.Stat. § 590.01, subd. 1 (2002) (providing that postconviction petition may not be filed "when direct appellant relief is available").

The district court sentenced appellant on December 11, 1997. Appellant perfected a direct appeal but stipulated to a voluntary dismissal of that appeal. Appellant's conviction became final on April 1, 1998, when the direct appeal was dismissed pursuant to that stipulation. *See Hutchinson v. State*, 679 N.W.2d 160, 162 (Minn.2004) (holding that appeal suspends a judgment but dismissal of appeal makes judgment final).

It is axiomatic that a case is final when a "judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari [has] elapsed or a petition for certiorari [has been filed and] finally denied." *O'Meara v. State*, 679 N.W.2d 334, 339 (Minn.2004) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). Conversely, a case is pending until such time as the availability of appeal has been exhausted, the time for a petition for certiorari has elapsed, or a petition for certiorari with the supreme court has been filed and finally denied. *Id.* Therefore, appellant's conviction was final in 1998 when the dismissal of his appeal exhausted the availability of a direct appeal.

Alternatively, appellant argues that even if his conviction was final in 1998

and his present postconviction petition is a collateral attack on that conviction, he is entitled to relief under *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989), because *Blakely* constitutes a "watershed rule of criminal procedure" which may be retroactively applied on collateral review. *Teague,* 489 U.S. at 311, 109 S.Ct. at 1076.

■ As a general matter, subject to two exceptions, if a defendant's conviction is already final at the time the new rule of law is announced, then the defendant may not avail himself of the new rule. *Teague,* 489 U.S. at 310–11, 109 S.Ct. at 1061; *O'Meara,* 679 N.W.2d at 339. Thus, to evaluate appellant's claim we must first determine whether *Blakely* announced a new constitutional rule.

■ Pursuant to *Teague,* a court's decision enunciates a "new rule of law" when the decision was not *"dictated"* by precedent existing at the time the defendant's conviction became final. *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070; *O'Meara,* 679 N.W.2d at 339.

In *O'Meara,* the Minnesota Supreme Court addressed the retroactivity of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and held, *inter alia,* that because *"Apprendi* unmistakably altered the legal landscape [it] is easily categorized as a new rule." *O'Meara,* 679 N.W.2d at 339, quoting *United States v. Moss,* 252 F.3d 993, 998 (8th Cir.2001), *cert. denied,* 534 U.S. 1097, 122 S.Ct. 848, 151 L.Ed.2d 725 (2002). *Blakely* similarly announced a new constitutional rule at least for purposes of this appeal as the parties agree, because it was not dictated by precedent existing when appellant's conviction became final, which was before the release of *Apprendi.*

At the time appellant's conviction became final in 1998, the Supreme Court still approved statutory sentencing schemes under which certain facts affecting the sentence were treated as sentencing factors only, not elements of the crime to be found by the jury. *See McMillan v. Pennsylvania,* 477 U.S. 79, 86, 106 S.Ct. 2411, 2416, 91 L.Ed.2d 67 (1986). The Court had "rejected an absolute rule that an enhancement constitutes an element of the offense any time that it increases the maximum sentence to which a defendant is exposed." *Monge v. California,* 524 U.S. 721, 729, 118 S.Ct. 2246, 2250–51, 141 L.Ed.2d 615 (1998). The most that a *minority* of the Court would have asserted at the time is that a fact that increases the maximum possible sentence must be considered an element of the offense, to be proven beyond a reasonable doubt. *See id.* at 738, 118 S.Ct. at 2255 (Scalia, J., dissenting). It appears that no member of the Court had advanced the idea adopted in *Blakely* that a fact that merely increased the sentence above a fixed presumptive term but still below the statutory maximum, must be found by a jury.

■ As a new constitutional rule, *Blakely* may only be applied retroactively to cases on collateral review if it: (1) places certain kinds of individual conduct beyond the power of the government to criminally proscribe; or (2) requires the observance of procedures that are "implicit in the concept of ordered liberty," meaning a "watershed rule[ ] of criminal procedure" that alters the understanding of the basic procedures essential to the fairness of a criminal conviction. *Teague,* 489 U.S. at 307, 311, 109 S.Ct. at 1073, 1076 (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)). Appellant does not claim that the first *Teague* exception is applicable to his case. Rather, appellant argues that *Blakely* is a "watershed rule of criminal procedure" because it increases the accuracy of the un-

derlying criminal proceeding by requiring a jury determination—beyond a reasonable doubt—of any facts used to support an upward durational departure. We disagree.

This court has previously held that the right to a jury determination of facts relevant only to sentencing does not fall within either of the *Teague* exceptions. *See Meemken v. State,* 662 N.W.2d 146, 150 (Minn.App.2003). In holding that *Apprendi* was not of watershed magnitude, this court in *Meemken,* stated that: "[w]e recognize that the *Apprendi* rule improves the accuracy of a sentence. However, the rule does not increase the reliability of the determination of guilt; it only limits the sentencing exposure of those who have already been validly convicted." *Id.* (citing *Moss,* 252 F.3d at 997). *Blakely* has the same procedural effect as *Apprendi,* increasing the accuracy of the sentence but not the conviction. Because the *Blakely* rule does not improve the accuracy or fairness of a trial, we conclude that it is not a watershed rule subject to retroactive application on collateral review. Accordingly, we now analyze the propriety of the district court's upward durational departure independent of *Blakely.*

### III

If a trial court decides to depart, it must state its reasons for departure on the record, and the reasons must justify the departure. *Williams v. State,* 361 N.W.2d 840, 843 (Minn.1985); Minn. Sent. Guidelines II.D. The sentencing commission has produced a nonexclusive list of appropriate aggravating and mitigating factors to assist a trial court considering departure in its analysis. *See* Minn. Sent. Guidelines II.D.2. While there are only "a small number of cases where substantial and compelling aggravating ... factors" militate towards departing from the guide-

lines, the decision to depart is one for the trial court. Minn. Sent. Guidelines II.D.01 cmt. The reviewing court shall not overturn the exercise of that discretion without clear evidence of its abuse. *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981).

Appellant argues that the district court abused its discretion by not clearly identifying, on the record, its reasons for upwardly departing. Further, appellant contends that, even if this court finds that the district court did sufficiently identify appropriate aggravating factors on the record, it abused its discretion by upwardly departing because the factors it cited were not substantial and compelling. Here, the district court referenced appellant's prior charge of criminal sexual conduct and stated that the current offense was unconscionable and inexcusable. But appellant argues that the cruelty of the crime was no different from the cruelty typically associated with a first-degree assault. Moreover, appellant claimed (presumably as mitigating factors) that the victim suffered no permanent injury and that he covered the infant with a blanket to shield the blow. In addition, appellant testified that he took the infant to the hospital when he noticed swelling.

The postconviction court concluded that the circumstances supporting the upward departure were compelling and substantial and supported by the record. We agree. The district court relied on appellant's prior conviction and the victim's vulnerability to depart. Minnesota Sentencing Guidelines II.D.2.b.(3) states that if the defendant's conviction is for "an offense in which the victim was otherwise injured, and there is a prior felony conviction for a Criminal Sexual Conduct offense or an offense in which the victim was injured," this prior conviction is an aggravating factor supporting upward departure. In addition, this court has held that an appellant's

prior conviction for a crime involving injury to a victim alone may be sufficient to justify an upward durational departure. *State v. Peake*, 366 N.W.2d 299, 301 (Minn. 1985). "This is so because repeated crimes against persons pose a greater threat to society than repeated property crimes." *State v. Larson*, 379 N.W.2d 165, 167 (Minn.App.1985).

The particular vulnerability of the victim is also an aggravating factor supporting an upward departure. Minn. Sent. Guidelines II.D.2.b.(1); *State v. Wickstrom*, 405 N.W.2d 1, 6 (Minn.App.1987). Appellant contends that the cruelty of his actions was encompassed in the first-degree assault charge. In support of his argument, appellant cites *State v. Lindsey*, 654 N.W.2d 718, 726 (Minn.App.2002), where this court modified the appellant's sentence to the presumptive sentence. But the postconviction court properly distinguished *Lindsey*, which involved an adult male assaulting a correctional officer by punching and kicking him. *Id.* Here, appellant punched his three-week-old son in the head two times, fracturing his skull. Appellant then waited until the next day to take his son to the hospital. This was an extremely cruel and vicious assault, and it is difficult to conceive of a victim more vulnerable than a three-week-old infant. Therefore, we conclude that the evidence in the record supports the district court's decision to depart, and affirm the postconviction court's conclusion that the district court did not abuse its discretion.

## IV

 Finally, appellant argues that he was denied due process because "[a]ppellant had the unfortunate luck of being in a system where everyone involved wanted to close his file." Appellant contends that his attorney wanted to "close his file" because he was handling more than 100 felonies.

Further, appellant speculates that the reason the sentencing court did not wait to review the neuropsychological report was because the judge was a visiting judge who was not at court very often, and granting a continuance could take months.

Appellant's due-process argument is not supported by the record. Appellant agreed to plead guilty, and the district court thoroughly reviewed the consequences of his plea with appellant before accepting his plea. Moreover, the court rescheduled appellant's sentencing hearing approximately three times, apparently in an attempt to have a complete record for sentencing. And, in fact, the district court ordered a psychosocial assessment, which it was not required to do, and then, upon recommendation of the psychosocial assessment, ordered the additional neuropsychological examination. Based on these facts, the record reflects that appellant received all the process he was due. Therefore, we conclude that the district court did not deny appellant due process and affirm the denial of appellant's postconviction petition.

## DECISION

Because *Blakely* established a new constitutional rule that does not fall within either of the *Teague* exceptions, *Blakely* does not apply retroactively to collateral review of appellant's 1998 conviction. In addition, appellant was not denied effective assistance of counsel; the district court did not abuse its discretion in granting a double upward departure; and appellant was not denied due process. Accordingly, we affirm the postconviction court's denial of appellant's postconviction petition.

Affirmed.

## ORDER

**BASED ON THE FILE, RECORD, AND PROCEEDINGS, AND BECAUSE:**

1. Our published opinion in this matter was filed on November 23, 2004.

2. The opinion indicated that appellant claimed to have filed a direct appeal from his conviction in 1998. A search of archived files confirms that a direct appeal was filed and indicates the nature of the dismissal of that appeal.

3. The opinion has been modified to reflect the result of the archival search and add necessary corrections.

**IT IS HEREBY ORDERED:** that the opinion filed November 23, 2004 is withdrawn and the attached opinion is substituted.