Timothy John O'MEARA,
petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C0–02–1982.

Supreme Court of Minnesota.

May 13, 2004.

Mark D. Nyvold, St. Paul, MN, for Appellant.

Mike A. Hatch, Minnesota Attorney General, Thomas Rolf Ragatz, Assistant Attorney General, Tricia Lynne Matzek, Assistant Attorney General, St. Paul, MN, Joseph A. Evans, Becker County Attorney, Detroit Lakes, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Justice.

In this case, we consider the circumstances under which a criminal defendant is entitled to benefit from a new rule of federal constitutional criminal procedure announced by the United States Supreme Court. The precise question we face is whether appellant Timothy John O'Meara's criminal case was "pending" when the United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), thus entitling him to the benefit of the rule announced in that decision, namely, that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.[1] The state concedes that if O'Meara is entitled to benefit from the *Apprendi* rule, his sentence was imposed in violation of *Apprendi*, and must therefore be reduced. We hold that if a case is pending on direct review when a new rule of federal constitutional criminal procedure is announced, a criminal defendant is entitled to benefit from that new rule.

Our holding today implicitly requires us to determine when a case is pending on direct review. We further hold that a case is pending until such time as the availability of direct appeal has been exhausted, the time for a petition for certiorari has elapsed or a petition for certiorari with the United States Supreme Court has been filed and finally denied. Because we conclude that O'Meara's case was pending when *Apprendi* was decided, he is entitled to benefit from the rule announced in that decision. We reverse and remand for imposition of the statutory maximum sentences of two consecutive 25-year terms under Minn.Stat. §§ 609.108, subd. 1, and 609.343, subd. 2 (1998), plus the conditional release term of 10 years mandated by Minn.Stat. § 609.109, subd. 7(a) (1998).

The underlying facts of this case are not in dispute. O'Meara waived his right to a jury trial and agreed to submit his case to the district court based on stipulated facts. *See* Minn. R.Crim. P. 26.01, subds. 1(2)(a) and 3; *State v. Lothenbach*, 296 N.W.2d 854 (Minn.1980). O'Meara stipulated that in May 1999, he and N.H., who was then age 10, were alone together at O'Meara's home and that a video camera was used to record his activities with N.H. O'Meara also stipulated that in June 1999, he was

---

1. In *State v. Grossman*, 636 N.W.2d 545 (Minn.2001), we applied the *Apprendi* holding to Minnesota's patterned sex offender sentence enhancement statute, Minn.Stat. § 609.108 (2002), and held that subdivision 2 of that statute was unconstitutional as applied to Grossman.

similarly alone at his house with B.K., who was then age 9, and that a video camera was also used to record his activities with B.K. Pursuant to a valid search warrant, police seized the videotape used to record the encounters. The videotape showed the two boys naked and showed O'Meara instructing them to masturbate. Detective John Sieling, who had watched the videotape, testified that O'Meara had put his hands on B.K.'s penis "three to four times." Detective Sieling also testified that O'Meara had put his hands on N.H.'s penis. O'Meara was convicted of two counts of second-degree criminal sexual conduct under Minn.Stat. § 609.343, subd. 1(a)(2) (1998).

The state requested that O'Meara be sentenced as a patterned sex offender pursuant to Minn.Stat. § 609.108, subd. 2. The state further requested that O'Meara be sentenced to the "maximum term allowed by law," or 40 years for each conviction pursuant to the same statute. The state also requested consecutive sentences. At O'Meara's sentencing hearing, Dr. Rick Ascano, the licensed psychologist who examined O'Meara, testified that (1) he has experience assessing sex offenders; (2) he conducted a clinical interview with O'Meara, performed a battery of psychological tests on him, and reviewed various documents related to his history of sexual misconduct; (3) he is familiar with the statutory definition of "patterned sex offender"; and (4) in his opinion, O'Meara is a patterned sex offender and a risk to public safety.

Specifically, Dr. Ascano testified that O'Meara (1) attempts to rationalize and justify his actions, and therefore attempts at rehabilitation will be hindered; (2) "is the type of individual who feel[s] more comfortable reaching out to vulnerable individual[s], i.e., children, in order to meet his emotional needs"; (3) has the "fairly significant or severe sexual problem of having psychosexual abnormality"; (4) is self-indulgent; (5) is passive-aggressive and resistant to dynamics imposed on him; (6) admitted to Dr. Ascano that "Deep down it excites me" in regard to having contact with children; (7) premeditatedly tries to access young children by dating or socializing with their mothers; (8) "is in need of a long-term treatment intervention and preferably in a structured environment, meaning not outpatient"; and (9) has a "significantly high" risk of reoffending.

Dr. Ascano testified that O'Meara required a *minimum* of 3 to 5 years of treatment and that rehabilitation might be impossible. He further testified that a prison term of 5 years would be inadequate to rehabilitate O'Meara if he lacked the "proper motivation." Dr. Ascano also testified that it was "questionable" that the presumptive sentence would be adequate because of O'Meara's 20-year history of sexual misconduct. Furthermore, the Presentence Investigation Report received by the district court included a victim impact statement which detailed the extensive trauma both minor victims have suffered.

The district court found that O'Meara is a danger to public safety because (1) he has two prior felony convictions for criminal sexual conduct; (2) he committed the acts with the two boys "shortly after [he] was released and while he was on parole" for the prior convictions; and (3) he "violated a position of trust in committing the acts perpetrated upon" the boys because "he was entrusted with the safekeeping of the victims while they spent the night at his house." The court also found that, based on Dr. Ascano's report, O'Meara is "in need of long-term treatment * * * beyond the presumptive term of the imprisonment and supervised release." The court further found that O'Meara's of-

fenses "were motivated by, committed in the course of, or committed in furtherance of sexual contact or penetration." Based on these findings, the court concluded that O'Meara is a patterned sex offender and sentenced him under the provisions of Minn.Stat. § 609.108, subds. 1 and 2, to two consecutive 40-year prison terms with a conditional release period of 10 years upon completion of the prison sentence.

In August 2000, O'Meara filed a notice of appeal of his conviction and sentence, but this notice was filed 3 days after the appeal deadline had passed, and thus was dismissed. In April 2002, O'Meara petitioned for postconviction relief. He argued that (1) his sentence violates *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the factors supporting the sentence were not submitted to a jury and proven beyond a reasonable doubt; (2) Dr. Ascano's testimony does not support a finding that O'Meara is a patterned sex offender; (3) his sentence violates due process and equal protection; (4) his sentence is unreasonable, inappropriate, and excessive; (5) the imposition of consecutive sentences under the patterned-sex-offender statute requires the presence of "severe aggravating factors," which he contended were not present; (6) the district court failed to use a zero criminal-history score when it imposed a consecutive sentence for his second conviction; and (7) his sentence constitutes cruel and unusual punishment.

The district court denied O'Meara's petition and the court of appeals affirmed, relying on the federal rule of nonretroactivity for new constitutional rules of criminal procedure. *See O'Meara v. State,* No. C0-02-1982, 2003 WL 21743557, at *3 (Minn.App. July 29, 2003) (applying rule from *Teague v. Lane,* 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) that, subject to two narrow exceptions, a new constitutional rule of criminal procedure is not applied retroactively to cases on collateral review). We granted O'Meara's petition for further review, directing the parties to address the question of the appropriate test to be applied for determining when a new constitutional rule should be retroactively applied on review of a conviction under the Postconviction Remedy Act, Minn.Stat. ch. 590 (2002).

I.

■ The determination of whether a decision applies retroactively or nonretroactively is a legal question that we review de novo. *State v. Costello,* 646 N.W.2d 204, 207 (Minn.2002). O'Meara claims that, like Grossman, he is entitled to benefit from the *Apprendi* rule, because *Apprendi* was decided prior to the expiration of his direct appeal period. O'Meara urges us to ignore the fact, however, that unlike Grossman, he failed to perfect a direct appeal. O'Meara essentially argues that his case was not final, because he still had time to appeal when *Apprendi* was decided.

■ It is axiomatic that as Minnesota's highest court we determine whether our decisions on *state law* are given retroactive or prospective effect. *American Trucking Associations v. Smith,* 496 U.S. 167, 177, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990). In this capacity, we have applied retroactive treatment to cases which are pending when a new rule is announced. *See State v. Baird,* 654 N.W.2d 105, 110 (Minn.2002) (holding that our ruling in *State v. Glowacki,* 630 N.W.2d 392 (Minn.2001) that there was no duty to retreat from one's own home even if the aggressor is a co-resident, applied retroactively because Baird's appeal was pending at the time *Glowacki* was decided); *State v. Misquadace,* 644 N.W.2d 65, 72 (Minn.2002) (stating that our holding in that case—that a

plea agreement, standing alone, is not a sufficient basis to depart from the sentencing guidelines—applied to pending cases).

■ In this case however, we are called upon to determine whether O'Meara is entitled to benefit from a new rule of *federal constitutional criminal procedure*. In this context, we are compelled to follow the lead of the Supreme Court in determining when a decision is to be afforded retroactive treatment. *American Trucking Associations*, 496 U.S. at 177–78, 110 S.Ct. 2323. In *Griffith v. Kentucky*, the United States Supreme Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, *pending on direct review or not yet final*, with no exception for cases in which the new rule constitutes a 'clear break' with the past." 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (emphasis added) (applying decision from *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to all cases not final as of date *Batson* was decided). If the conviction is not yet final (i.e., is "pending") when the Supreme Court announces the rule, then inferior courts must apply that rule to the defendant's case. *Id.*

■ If a defendant's conviction is already final at the time the new rule is announced, then the defendant ordinarily may not avail himself of the new rule. *Teague*, 489 U.S. at 310-11, 109 S.Ct. 1060 (holding that the United States Constitution does not mandate that decisions enunciating "new rules of law" apply to convictions that have become final). "Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Id.* at 309, 109 S.Ct. 1060.

■ Pursuant to *Teague*, a court's decision enunciates a "new rule of law" when the decision was not dictated by precedent existing at the time the defendant's conviction became final. *Id.* at 301, 109 S.Ct. 1060. "A holding constitutes a 'new rule' within the meaning of *Teague* if it 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not '*dictated* by precedent existing at the time the defendant's conviction became final.' " *Graham v. Collins*, 506 U.S. 461, 467, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (quoting *Teague*, 489 U.S. at 301, 109 S.Ct. 1060) (emphasis in original). Because "*Apprendi* unmistakably altered the legal landscape [it] is easily categorized as a new rule." *United States v. Moss*, 252 F.3d 993, 998 (8th Cir.2001), *cert. denied*, 534 U.S. 1097, 122 S.Ct. 848, 151 L.Ed.2d 725 (2002). A case is final when a "judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari [has] elapsed or a petition for certiorari [has been filed and] finally denied." *Griffith*, 479 U.S. at 321 n. 6, 107 S.Ct. 708. Conversely, a case is pending until such time as the availability of appeal has been exhausted, the time for a petition for certiorari has elapsed or a petition for certiorari with the Supreme Court has been filed and finally denied. *Id.*

■ In accordance with *Griffith* and *Teague*, we hold that if a case is pending on direct review when a new rule of federal constitutional criminal procedure is announced, the defendant is entitled to benefit from that new rule.[2] But if the

---

2. The state contends that this rule would apply "to everyone, or at least to every defen-

dant who has not taken a direct appeal." This contention is incorrect, as this rule only

defendant's conviction is already final at the time the new rule is announced, then the criminal defendant ordinarily may not avail himself of the new rule.[3]

■ Having settled on the proper methodology for determining retroactivity, we next turn to the question of when O'Meara's conviction became final. O'Meara's appeal period expired on August 6, 2000. Having failed to perfect a direct appeal, his conviction became final on that date. *Apprendi* was decided on June 26, 2000. Because the *Apprendi* decision was handed down before O'Meara's conviction became final, O'Meara is entitled to benefit from the *Apprendi* rule, as we applied it in *Grossman.* The state has conceded that if O'Meara is entitled to benefit from the *Apprendi* rule, his sentence was imposed in violation of *Apprendi,* and must therefore be reduced. We agree with the state. The effect of the district court's findings, when coupled with the jury's finding of sexual contact, was to increase by 15 years for each conviction the prison sentence to which O'Meara was exposed. Due process, however, requires that each of these findings be made by a jury based on proof beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. Therefore, Minn.Stat. § 609.108, subd. 2, as applied to O'Meara is unconstitutional and his sentences must be reduced. *Grossman,* 636 N.W.2d at 551.

## II.

■ We now turn our attention to the appropriate sentence duration for O'Meara's offenses. O'Meara contends that his sentence, even if reduced to two consecutive 25-year terms, is violative of Minn.Stat. § 244.11, subd. 2(b) (2002), as it is "unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court."[4] We disagree.

Under the patterned-sex-offender statute, a person convicted of certain patterned and predatory sex offenses "shall" be sentenced to "not less than double the presumptive sentence under the sentencing guidelines and not more than the statutory maximum" if the court determines that the person (1) was motivated by sexual impulses or the crime "was part of a predatory pattern of behavior that had criminal sexual conduct as its goal"; (2) endangers public safety; and (3) "needs long-term treatment or supervision beyond the presumptive term of imprisonment and supervised release." Minn.Stat. § 609.108, subd. 1(a) (2002).[5] The district court made all of these required findings on the record.

Given its findings under Minn.Stat. § 609.108, subd. 1(a), and O'Meara's criminal history score of 5, the district court, if

---

benefits a criminal defendant when a new constitutional rule is announced *prior to* the expiration of his direct appeal period.

**3.** The two exceptions to *Teague's* general rule that new rules of law do not apply to convictions that have become final are (1) new rules that "place an entire category of primary conduct beyond the reach of the criminal law, or new rules that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense"; and (2) "new watershed rules of criminal procedure that are necessary to the fundamental fairness

of the criminal proceeding." *Sawyer v. Smith,* 497 U.S. 227, 241-42, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (citations omitted).

**4.** O'Meara concedes that imposition of the 10–year conditional release term does not violate *Apprendi. See also State v. Jones,* 659 N.W.2d 748, 753 (Minn.2003).

**5.** Because Minn.Stat. § 609.108, subd. 1(a), limits the maximum sentence to the *statutory* maximum, in this case 25 years, it is not unconstitutional under *Apprendi/Grossman,* and O'Meara makes no claim to the contrary.

sentencing consecutively, was required to impose minimum sentences of 102 months for the first conviction and 42 months for the second.[6] The maximum permissible sentence for second-degree criminal sexual conduct, however, is 25 years for each conviction. *See* Minn.Stat. § 609.343, subd. 2(a) (1998). Consecutive sentences are permissive for multiple current felony convictions of crimes against separate individuals, and consecutive sentencing under these circumstances is not a departure from the sentencing guidelines. *See* Minnesota Sentencing Guidelines II.F.2.

At sentencing, the district court stated that its intent was to impose the statutory maximum sentences and to impose those sentences consecutively. As outlined above, the court made extensive findings regarding (1) O'Meara's abuse of a position of trust; (2) his unamenability to treatment; and (3) the serious threat he poses to public safety. On the basis of this record, we conclude that the court did not abuse its discretion in departing upward and sentencing O'Meara to the maximum sentences permitted by law. We therefore remand to the district court for the imposition of the statutory maximum sentences. *Grossman*, 636 N.W.2d at 551.

Reversed and remanded for imposition of the statutory maximum sentences of two consecutive 25-year terms under Minn. Stat. §§ 609.108, subd. 1, and 609.343, subd. 2, plus the conditional release term of 10 years mandated by Minn.Stat. § 609.109, subd. 7(a).

PAGE, J., took no part in the consideration or decision of this case.

---

6. In order to avoid exaggerating the impact of previous criminality, the guidelines require that a zero criminal history score be used when computing the presumptive duration of the second (consecutive) sentence. Minnesota Sentencing Guidelines II.F.