**STATE of Minnesota, Respondent,**

v.

**Anthony J. BEATY, Appellant.**

**No. A04–1798.**

Court of Appeals of Minnesota.

May 24, 2005.

John M. Stuart, State Public Defender, F. Richard Gallo, Jr., Assistant State Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Michael K. Riley, Nicollet County Attorney, St. Peter, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; RANDALL, Judge; and MINGE, Judge.

## OPINION

WRIGHT, Judge.

Appellant challenges the duration of his sentence first imposed at a probation-revocation hearing, arguing that the district court, by vacating the stay of imposition and imposing and executing a sentence that is an upward durational departure from the Minnesota Sentencing Guidelines, violated appellant's Sixth Amendment right to a jury trial as recognized in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We reverse appellant's sentence and remand this matter to the district court for reconsideration of the sentence in light of the new rule announced in *Blakely*.

## FACTS

In January 2000, L.B. obtained an order for protection against appellant Anthony Beaty. Three months later, L.B. reported to law enforcement that Beaty sent a letter to her home, in violation of the order for protection. In the letter, Beaty called L.B. derogatory names and threatened L.B.'s life. Beaty was subsequently charged with violation of an order for protection, in violation of Minn.Stat. § 518B.01, subd. 14(d)(1) (1998), and terroristic threats, in violation of Minn.Stat. § 609.713, subd. 1 (1998).

Beaty pleaded guilty to both offenses. At the sentencing hearing on October 2, 2000, the district court imposed the presumptive guidelines sentence of 18 months' imprisonment with a stay of execution for the terroristic-threats offense. For the conviction of violation of an order for protection, the district court stayed the imposition of a sentence and placed Beaty on supervised probation for five years.

Several years later, Beaty was alleged to be in violation of the conditions of his probation. At the probation-revocation hearing on June 23, 2004, Beaty admitted the violations. The district court revoked Beaty's probation and executed the 18–month sentence previously imposed on the terroristic-threats conviction. The district court then vacated the stay of imposition on the conviction of violation of an order for protection and imposed a 36–month executed sentence, to be served concurrently. This sentence was an upward durational departure from the presumptive guidelines sentence.[1] The district court's reasons for imposing the upward departure were that (1) Beaty repeatedly violated the order for protection; (2) L.B. suffered extreme adverse effects; and (3) probation did not deter Beaty from violating the order for protection. The next day, the United States Supreme Court issued its decision in *Blakely v. Washington*,

---

1. Violation of an order for protection is a severity-level IV offense. Minn. Sent. Guidelines V. With a criminal-history score of 3, the presumptive guidelines sentence is 21 months. Minn. Sent. Guidelines IV.

542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). This appeal followed.

## ISSUE

Does *Blakely v. Washington* apply retroactively to a pending appeal arising from a probation-revocation proceeding in which the district court vacated a stay of imposition and imposed a sentence that is an upward durational departure from the Minnesota Sentencing Guidelines?

## ANALYSIS

■ Citing *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), Beaty argues that the upward durational departure imposed following the vacation of a stay of imposition violates his Sixth Amendment right to a jury trial. In *Blakely,* the United States Supreme Court refined the rule announced in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." 124 S.Ct. at 2536 (quoting *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63). The *Blakely* court held that the greatest sentence a judge can impose is "the maximum sentence [that may be imposed] solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 2537. Accordingly, the defendant has a Sixth Amendment right to a jury determination of any fact, except the fact of a prior conviction, that increases the sentence above this maximum. *Id.* at 2543. *Blakely* announced a new constitutional rule that was not dictated by the holding of *Apprendi. State v. Houston,* 689 N.W.2d 556, 559 (Minn.App.2004), *review granted* (Minn. Jan. 20, 2005).

## I.

■ Because the *Blakely* decision was released the day after Beaty's sentence was imposed, we must first determine whether the new rule of constitutional procedure announced in *Blakely* applies retroactively to Beaty's sentence imposed at the probation-revocation hearing. The determination of whether a decision applies retroactively is a legal question, which we review de novo. *State v. Costello,* 646 N.W.2d 204, 207 (Minn.2002).

■ A new rule for the conduct of criminal prosecutions applies retroactively to all cases "pending on direct review or not yet final." *O'Meara v. State,* 679 N.W.2d 334, 339 (Minn.2004) (quoting *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987)). A case is considered final when a "judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari [has] elapsed or a petition for certiorari [has been filed and] finally denied." *Griffith,* 479 U.S. at 321 n. 6, 107 S.Ct. at 712 n. 6; *O'Meara,* 679 N.W.2d at 339. Conversely, a case is "pending" and, therefore, subject to the new rule if the defendant's judgment of conviction has been rendered but all rights to appeal and certiorari have not been exhausted. *Id.*

In assessing when a case is "pending on direct review or not yet final," we have generally used the date the defendant's conviction became final without addressing the effect of a stay of imposition without a sentence duration. For instance, in *State v. Petschl,* 692 N.W.2d 463, 470–72 (Minn. App.2004), *review denied* (Minn. Jan. 20, 2005), we reasoned that *Blakely* does not apply retroactively on collateral review of a conviction that was final before *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. In *State v. Houston,* 689 N.W.2d 556, 560 (Minn.App.2004), *review granted* (Minn. Jan. 20, 2005), we held that *Blakely* does not apply retroac-

tively on collateral review of a conviction that was final after *Apprendi*. And in *State v. Losh*, 694 N.W.2d 98, 101 (Minn. App.2005), we held that *Blakely* does not apply retroactively to a pending probation-revocation appeal from an order executing a sentence previously imposed because the defendant's conviction had become final.

In all of these cases, however, the district court pronounced the sentence—in the form of an upward durational departure—at the sentencing hearing when the judgment of conviction was entered. Because the sentence had been imposed, the defendant was able to challenge the upward durational departure during the 90–day–direct–appeal period, but failed to do so.

Because the district court stayed the imposition of Beaty's sentence, Beaty's circumstances differ significantly. Not until the day before *Blakely* was released did the district court vacate Beaty's stay of imposition and impose a sentence that was an upward durational departure from the sentencing guidelines. Because Beaty could not have known the duration of his sentence before the stay of imposition was vacated, the date the sentence was imposed marked the first opportunity for Beaty to appeal an upward departure imposed in violation of the Sixth Amendment.

In *United States v. Martin*, a case addressing the retroactivity of a modification to the standard of review for sentencing departures, the First Circuit concluded that *Griffith* compels courts to "apply procedural changes retroactively to *all sentences* that are not final, even if such application might result in disadvantage to one of the parties." 363 F.3d 25, 46 (1st Cir. 2004). The *Martin* court later determined, "[b]ecause [the] sentence is still subject to appeal, it is not 'final' for retroactivity purposes." *Id.* at 46 n. 35. The

*Martin* court's reasoning is persuasive here.

■ In applying *Griffith*'s retroactivity standard—that a new rule for the conduct of criminal prosecutions applies retroactively to all "cases ... not yet final"—we consider the context of the new rule being announced. *Griffith* addressed the retroactivity of the rule announced in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a rule pertaining to the validity of the conviction, not the severity of the sentence. 479 U.S. at 318, 107 S.Ct. at 710–11; *see also Richardson v. Gramley*, 998 F.2d 463, 466 (7th Cir.1993). As such, the date the conviction became final was the material date from which to assess retroactivity in *Griffith*. The *Blakely* decision, however, created a new rule governing sentencing departures. Thus, as in *Martin*, the date the duration of the sentence becomes final is the lodestar for determining retroactivity.

■ When the district court stays the imposition of a sentence, no sentence is pronounced and imposition of a sentence is stayed on the condition that the defendant satisfies the terms of probation. Minn. Sent. Guidelines cmt. II.C.04; *see also State v. Cizl*, 304 N.W.2d 632, 634 (Minn. 1981) (stating that when district court stays imposition of sentence, the duration of the sentence is not pronounced); *State v. Stafford*, 368 N.W.2d 364, 366 (Minn. App.1985) (noting court that vacated stay of imposition was the "first court to actually sentence appellant"). Upon vacation of the stay of imposition, the district court has the discretion to "impose any lawful sentence." *State v. Schwab*, 404 N.W.2d 284, 285 (Minn.App.1987) (quotation omitted), *review denied* (Minn. June 9, 1987). Thus, the point at which the district court vacates the stay and imposes the sentence is the first opportunity to appeal the duration of the sentence. *See id.* (appealing from sentence imposed at probation-revo-

cation hearing more than two years after defendant entered guilty plea); *see also State v. Fields,* 416 N.W.2d 734, 736 (Minn. 1987) (allowing defendant to challenge sentence when stay of execution was revoked at probation-violation hearing).

Beaty could not have known of the upward durational departure before the stay of imposition was vacated. June 23, 2004, the date of the probation-revocation hearing at which the sentence constituting an upward durational departure was imposed, marked the first opportunity for Beaty to appeal the sentence. For all practical purposes, the 90–day period to file a "direct appeal" of Beaty's upward durational departure had just begun. *See Fields,* 416 N.W.2d at 736 (reasoning that because defendant lacks motivation to appeal upward durational departure when its execution has been stayed, probation-revocation appeal should be treated like direct appeal). Because Beaty's sentence was still subject to appeal when *Blakely* was released on June 24, 2004, Beaty's sentence was "not final for retroactivity purposes." *Martin,* 363 F.3d at 46 n. 35 (quotation omitted).

◼ Accordingly, we hold that, when a district court stays the imposition of a sentence, thereby precluding a challenge to the sentence duration on direct review, and later vacates the stay and imposes a sentence that is an upward durational departure, *Blakely* applies retroactively to a defendant's pending appeal of the sentence imposed because the sentence was not final when *Blakely* was released.[2]

Our conclusion comports with the principles underlying the *Griffith* decision. *Griffith*'s retroactivity analysis reflects the judiciary's constitutional obligation to avoid treating similarly situated defendants differently. 479 U.S. at 323, 107 S.Ct. at 713. The *Griffith* court reasoned that any retroactivity analysis must foreclose "the actual inequity that results when the Court chooses which of many similarly situated defendants should be the 'chance beneficiary' of a new rule." *Id.* (quotation omitted). If Beaty were deprived of the benefit of *Blakely,* Beaty would be treated differently from other defendants whose sentence duration was pronounced on the same day that Beaty's sentence duration was pronounced. Thus, every other defendant who received an executed sentence on June 23, 2004—the date in which Beaty also received an executed sentence—could benefit from the *Blakely* decision because that defendant's direct-appeal period would not have expired when *Blakely* was released. The *Blakely* decision pertains to the defendant's constitutional rights as they relate to sentencing, not to the accuracy of the conviction. Disparate treatment of similarly situated defendants would result if we held that, even though Beaty's sentence was not imposed until June 2004, the date of conviction in 2000 controls whether the *Blakely* decision applies to Beaty's sentence.

2. Our holding is not in conflict with our decision in *State v. Losh,* 694 N.W.2d 98 (Minn. App.2005), where we concluded that *Blakely* does not apply retroactively to a pending probation-revocation appeal arising from the vacation of a stay of execution of a sentence. In sentencing Losh, the district court imposed the sentence but stayed its execution. *Id.* at 99–100. Thus, the defendant was aware of the sentence duration—and the upward departure—at the sentencing hearing when the judgment of conviction was entered. Under the facts in *Losh,* the defendant could have appealed his sentence during the 90–day–direct–appeal period. Applying *Blakely* retroactively in the *Losh* scenario would give the defendant a "second bite at the apple." But to fail to apply *Blakely* in the instant case would deprive the defendant of any bite at the apple. Beaty had no opportunity to appeal his sentence until the district court vacated the stay of imposition on June 23, 2004. For the purpose of determining *Blakely*'s retroactive application, the difference between a stay of execution and a stay of imposition is a marked one.

## II.

■ Having concluded that *Blakely* applies retroactively to Beaty's appeal, we next address Beaty's central contention—that the imposition of the upward durational departure based on judicial findings of fact violates his right to a jury trial announced in *Blakely*.

The Minnesota Supreme Court has held that an upward durational departure from the Minnesota Sentencing Guidelines based on judicial findings violates a defendant's right to a jury trial under *Blakely*. *State v. Shattuck*, 689 N.W.2d 785, 786 (Minn.2004) (per curiam) [3]; *see also State v. Conger*, 687 N.W.2d 639, 644–45 (Minn. App.2004) (applying *Blakely* to upward durational departures imposed under Minnesota Sentencing Guidelines and holding that, when sentence is imposed pursuant to a guilty plea, reasons for departing durationally must be based solely on facts admitted by the defendant), *review granted* (Minn. Dec. 22, 2004) [4]; *State v. Saue*, 688 N.W.2d 337, 344 (Minn.App.2004) (applying *Blakely* to upward durational departures imposed after jury trial), *review granted* (Minn. Jan. 20, 2005). A defendant's admission of facts that support an upward departure is not sufficient to withstand a constitutional challenge under *Blakely* unless the defendant makes a knowing, voluntary, and intelligent waiver

of the right to a jury trial on the aggravating factors. *State v. Hagen*, 690 N.W.2d 155, 158–59 (Minn.App.2004); *see State v. Ross*, 472 N.W.2d 651, 653 (Minn.1991) (defendant's waiver of jury-trial rights must be knowing, intelligent, and voluntary).

Beaty pleaded guilty to violating an order for protection. The findings supporting the upward durational departure were not found by a jury. Although in the course of entering his guilty plea Beaty was informed in general terms of his right to a jury trial, he was not specifically advised that he had a right to have a jury determine any fact used to support an upward departure from the sentencing guidelines. Because Beaty did not knowingly waive his right to a jury trial on the aggravating factors, his admissions may not provide a factual basis to support the aggravating factors. Thus, the upward durational departure based on judicial findings violated Beaty's Sixth Amendment right to a jury trial. We, therefore, reverse Beaty's sentence and remand this matter to the district court for reconsideration of the sentence in light of the new rule announced in *Blakely*.[5]

## DECISION

Because the district court stayed the imposition of appellant's sentence and ap-

---

**3.** The *Shattuck* court rendered its decision in an order, indicating that a full opinion would follow. 689 N.W.2d at 786. It also directed supplemental briefing to address the appropriate remedy. *Id.*

**4.** The Minnesota Supreme Court granted review in *Conger* but stayed further processing of that matter pending its final decision in *State v. Shattuck*, No. C6–03–362 (argued Nov. 30, 2004).

**5.** Although not raised on appeal, we note that, even without the benefit of *Blakely*, Beaty's upward durational departure is unwarranted. "If the reasons given [for an upward departure] are improper or inadequate and there is

insufficient evidence of record to justify the departure, the departure will be reversed." *State v. McIntosh*, 641 N.W.2d 3, 8 (Minn. 2002). An upward departure is justified when the defendant's conduct is "significantly more ... serious than that typically involved in the commission of the crime in question." *State v. Back*, 341 N.W.2d 273, 276 (Minn. 1983).

The district court cited three reasons for the upward departure: (1) Beaty repeatedly violated the order for protection; (2) [L.B.] suffered extreme adverse effects; and (3) probation did not deter Beaty from violating the order for protection. Because the third factor reasonably supports the revocation, which

pellant could not challenge the duration of his sentence until the sentence was imposed at the probation-revocation hearing, *Blakely* applies retroactively to appellant's pending appeal of the sentence imposed. When the district court imposed a sentence that was an upward durational departure from the Minnesota Sentencing Guidelines based on judicial findings, appellant's Sixth Amendment right to a jury trial was violated.

**Reversed and remanded.**

Beaty does not contest, we examine only the first two factors.

The first reason cited here is inadequate to support an upward durational departure because a departure must be based on conduct involved in the offense for which the sentence is imposed, not based on the facts of another offense or for a general course of conduct. *See Taylor v. State*, 670 N.W.2d 584, 588 (Minn.2003) (holding that upward departure may not be based on uncharged offenses of which defendant was not convicted). Although Beaty sent several letters to L.B., he was charged with only two counts of violation of an order for protection. The other violations referred to by the district court either served as the basis for a separate felony conviction and thus were already considered in calculating Beaty's sentence by increasing his criminal-history score or formed the basis for separate uncharged offenses.

The second reason also fails to support an upward durational departure. L.B.'s reaction to Beaty's conduct does not demonstrate that Beaty's conduct was "significantly more ... serious" than conduct typically involved in a violation of an order-for-protection offense. Beaty violated the order for protection by sending a threatening letter to L.B.'s home. Such conduct is, unfortunately, quite typical for this offense. And the district court did not base its decision on the particular vulnerability of the victim, which can be a valid basis for an upward departure.