# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2161

_____

Timothy J. O'Meara,

        Appellant,

v.

Warden Robert Feneis,

        Appellee.

\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of Minnesota.
\*
\*
\*

_____

Submitted: May 13, 2010
Filed: August 19, 2010

_____

Before WOLLMAN, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Timothy J. O'Meara appeals the denial of a writ of habeas corpus. O'Meara was convicted of two counts of second-degree criminal sexual assault in Minnesota state court in April 2000. O'Meara failed to timely file a direct appeal. O'Meara did, however, obtain postconviction relief from the Minnesota Supreme Court, which remanded O'Meara's case for resentencing based upon *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Before O'Meara's resentencing, the Supreme Court of the United States decided in *Blakely v. Washington* that an upward departure from the maximum statutory sentence is unconstitutional under a guideline sentencing system unless a jury finds the underlying facts or the defendant admits such facts. 542 U.S. 296 (2004). After O'Meara's resentencing, he appealed to the Minnesota Court of Appeals,

arguing that *Blakely* applied to his case. The Minnesota Court of Appeals concluded that *Blakely* did not apply retroactively and affirmed O'Meara's new sentence. The Minnesota Supreme Court subsequently denied review.

O'Meara filed the instant case for federal habeas relief contending that his new sentence violates *Blakely*. The district court[1] denied O'Meara's petition after concluding that the Minnesota Court of Appeals did not act contrary to, or unreasonably apply, clearly established federal law when it concluded that O'Meara's conviction became final in 2000 when his direct-appeal period expired and that, as a result, *Blakely* did not apply retroactively to his case. We granted a certificate of appealability to address whether the Minnesota Court of Appeals's decision that *Blakely* did not apply to the determination of O'Meara's sentence was contrary to, or involved an unreasonable application of, clearly established federal law. We now affirm the judgment of the district court.

## I. *Background*

In 1999, O'Meara was charged with two counts of second-degree criminal sexual conduct, in violation of Minnesota Statute § 609.343, subdivision 1(a)(2). He waived his right to a jury trial and stipulated that he used a video camera to record two naked boys, ages 9 and 10, masturbating. The state trial court convicted O'Meara of both counts.

Prior to sentencing, the prosecution requested that the state trial court sentence O'Meara as a patterned sex offender under Minnesota Statute § 609.108, subdivision 2.[2] At the sentencing hearing, a licensed psychologist testified that, in his opinion,

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[2]    Section 609.108, subdivision 2, permit[ted] a court to impose a sentence of up to 40 years, "notwithstanding the

O'Meara was a "patterned sex offender" within the meaning of § 609.108. The state trial court concluded that O'Meara was a patterned sex offender and sentenced him to two consecutive 40-year prison terms pursuant to § 609.108, subdivisions 1 and 2. If the state trial court had sentenced O'Meara under § 609.343, subdivision 2—criminal

---

> statutory maximum imprisonment penalty otherwise provided for the offense." A defendant c[ould] be sentenced to an increased penalty under subdivision 2 only if "the factfinder determines, at the time of the trial or the guilty plea, that a predatory offense was motivated by, committed in the course of, or committed in furtherance of sexual contact or penetration, as defined in section 609.341, and the court is imposing a sentence under subdivision 1."

*State v. Grossman*, 636 N.W.2d 545, 549 (Minn. 2001) (quoting Minn. Stat. § 609.108, subdiv. 2). In turn, § 609.108, subdivision 1(a),

> require[d] a court to impose a sentence of not less than double the presumptive sentence and not more than the statutory maximum sentence when each of the following three conditions [was] satisfied: First, the court must be imposing a sentence for a conviction of any of four enumerated offenses, including first-degree criminal sexual conduct, or for a conviction of any other predatory crime "if it reasonably appears to the court that the crime was motivated by the offender's sexual impulses or was part of a predatory pattern of behavior that had criminal sexual conduct as its goal." Minn. Stat. § 609.108, subd. 1(a)(1) (2000). Second, the court must find "that the offender is a danger to public safety." *Id.* subd. 1(a)(2). Third, the court must also find "that the offender needs long-term treatment or supervision beyond the presumptive term of imprisonment and supervised release." This finding "must be based on a professional assessment by an examiner experienced in evaluating sex offenders that concludes that the offender is a patterned sex offender." *Id.* subd. 1(a)(3).

*Id.* Section 609.108 was repealed effective August 1, 2006.

sexual misconduct—rather than the patterned sex offender statute, the maximum sentence for each count would have been 25 years' imprisonment.

O'Meara failed to timely appeal his judgment of conviction.[3] But before the time period in which he could have directly appealed expired, the Supreme Court of the United States decided *Apprendi*.[4] In April 2002, O'Meara petitioned for state postconviction relief, arguing, inter alia, that his sentence violated *Apprendi*. The state trial court denied O'Meara's petition for postconviction relief, and the Minnesota Court of Appeals affirmed. *O'Meara v. State*, No. C0-02-1982, 2003 WL 21743557 (Minn. Ct. App. July 29, 2003) (unpublished) ("*O'Meara I*").

On May 13, 2004, the Minnesota Supreme Court reversed, holding that the Minnesota Court of Appeals erred in concluding that O'Meara was not entitled to the benefit of *Apprendi*. *O'Meara v. State*, 679 N.W.2d 334, 341 (Minn. 2004) ("*O'Meara II*"). According to the court,

> if a case is pending on direct review when a new rule of federal constitutional criminal procedure is announced, the defendant is entitled to benefit from that new rule. But if the defendant's conviction is already final at the time the new rule is announced, then the criminal defendant ordinarily may not avail himself of the new rule.

*Id*. at 339–40 (footnotes omitted) (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987); *Teague v. Lane*, 489 U.S. 288 (1989)). The court then addressed when O'Meara's conviction became "final," stating:

---

[3]O'Meara filed his appeal three days after the August 6, 2000 due date. As a result, his appeal was dismissed.

[4]The Supreme Court decided *Apprendi* on June 26, 2000.

O'Meara's appeal period expired on August 6, 2000. *Having failed to perfect a direct appeal, his conviction became final on that date.* *Apprendi* was decided on June 26, 2000. Because the *Apprendi* decision was handed down before O'Meara's conviction became final, O'Meara is entitled to benefit from the *Apprendi* rule, as we applied it in *Grossman*. The state has conceded that if O'Meara is entitled to benefit from the *Apprendi* rule, his sentence was imposed in violation of *Apprendi*, and must therefore be reduced.

*Id*. at 340 (emphasis added). In light of its holding, the court

[r]eversed and remanded for imposition of the statutory maximum sentences of two consecutive 25-year terms under Minn. Stat. §§ 609.108, subd. 1, and 609.343, subd. 2, plus the conditional release term of 10 years mandated by Minn. Stat. § 609.109, subd. 7(a).

*Id*. at 341.

While O'Meara awaited resentencing, on June 24, 2004, the Supreme Court issued *Blakely*, holding that an upward departure from the maximum statutory sentence is unconstitutional under a guideline system unless a jury finds the underlying facts or the defendant admits such facts.

On August 11, 2004, the state trial court resentenced O'Meara. At the resentencing hearing, O'Meara argued that "under *Blakely* and *Apprendi*, the longest sentences he could receive were the 'top of the box' presumptive guidelines." *State v. O'Meara*, No. A-04-2140, 2005 WL 3527124, at *2 (Minn. Ct. App. Dec. 27, 2005) (unpublished) ("*O'Meara III*"). The state trial court rejected O'Meara's argument, concluding "that *Blakely* did not apply to [O'Meara's] case because [O'Meara's] case had become final in August 2000, well before the decision in *Blakely*. Based on its earlier findings under the patterned sex offender statute, the court sentenced [O'Meara] to two consecutive 25-year prison terms." *Id*.

O'Meara appealed to the Minnesota Court of Appeals, asserting that "his sentence is unconstitutional because a judge, not a jury, decided the facts supporting the upward durational departure based on the patterned sex offender statute. He argue[d] that his case was still pending, not yet final, and therefore, the holding in *Blakely* applies to his case." *Id.*[5] The court rejected O'Meara's argument, reasoning that O'Meara's "case became final on August 6, 2000, almost four years prior to *Blakely*." *Id.* at *4. The court also rejected O'Meara's contention that "the holding in *Blakely* is to be applied retroactively" based on a prior holding of the Minnesota Supreme Court. *Id.* (citing *State v. Houston*, 702 N.W.2d 268, 274 (Minn. 2005)). On March 14, 2006, the Minnesota Supreme Court denied review of the Minnesota Court of Appeals's decision.

On March 6, 2007, O'Meara petitioned for writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that (1) his sentence was unconstitutional because it was premised on facts found by a judge and not by a jury; (2) he is entitled to the benefit of *Blakely* because his conviction was not final when *Blakely* was decided; and (3) even if his sentence was final when *Blakely* was decided, *Blakely* announced a watershed rule that should apply retroactively to his case.

The magistrate judge issued a report and recommendation in which he recommended that the district court deny O'Meara's petition and dismiss the action with prejudice. The magistrate judge determined that the Minnesota Court of Appeals committed no habeas error "in concluding that O'Meara's conviction was final in August 2000." As a result, the magistrate judge found that the court's decision "cannot be contrary to clearly established federal law" and that the court's "application of the

---

[5]As the magistrate judge pointed out in his report and recommendation to the district court, O'Meara waived a jury trial and agreed to stipulated facts. The State does not argue that O'Meara's waiver of a jury trial encompassed facts found at sentencing, and the Minnesota Court of Appeals's decision under review did not consider such argument. Therefore, we will not address it.

-6-

*Griffith* line of cases, the closest relevant precedent, was not objectively unreasonable." Furthermore, the magistrate judge concluded that the court reasonably applied *Teague* in holding that *Blakely* did not retroactively apply to O'Meara's final judgment of conviction. The district court adopted the magistrate judge's report and recommendation.

Thereafter, we issued a certificate of appealability on the following question:

> Whether the decision of the Minnesota Court of Appeals that the rule of *Blakely v. Washington*, 542 U.S. 296 (2004), did not apply to the determination of Mr. O'Meara's sentence was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

## II. *Discussion*

O'Meara argues that the Minnesota Court of Appeals's decision that *Blakely* did not apply to his sentence was contrary to established precedent of the Supreme Court. According to O'Meara, because he was awaiting resentencing in 2004 when the Court decided *Blakely*, his conviction and sentence were not "final," meaning that *Blakely* applies to him.[6] Additionally, O'Meara argues that his conviction was no longer "final" after the Minnesota Supreme Court's decision in May 2004 because his original sentence was no longer in existence.

In response, the State asserts that the Minnesota Court of Appeals correctly applied *Griffith*—a decision of the Supreme Court—in determining that O'Meara's conviction became final before *Blakely* was decided. According to the State, *Griffith* stated that a judgment of conviction becomes final upon the conclusion of direct

---

[6]O'Meara acknowledges in his brief that he *is not* arguing that, even if his sentence was final when *Blakely* was decided, *Blakely* announced a watershed rule that should apply retroactively to his case.

review and held that new rules of federal criminal procedure apply retroactively to all cases pending on direct review or are not yet final. As a result, the State concludes that because *Blakely* was decided in 2004—long after O'Meara's direct-appeal period expired in August 2000—*Blakely* does not apply retroactively to O'Meara.

We must determine "whether the state supreme court acted contrary to or unreasonably applied clearly established federal law when it ruled against [O'Meara]." *Losh v. Fabian*, 592 F.3d 820, 823 (8th Cir. 2010) (citing Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1)). We may grant O'Meara's habeas petition

> on one of two grounds under the "contrary to" clause of § 2254(d)(1): "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). [His] petition could be granted under the "unreasonable application" clause only if the state court applied the correct governing legal principle in an objectively unreasonably manner. *Id*. at 409, 413, 120 S. Ct. 1495. Only rulings in Supreme Court decisions issued before the state court acts are considered clearly established federal law, *id*. at 412, 120 S. Ct. 1495, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on the point, *see Evenstad v. Carlson*, 470 F.3d 777, 784 (8th Cir. 2006).

*Id*.

In *Blakely*, the Supreme Court decided "that an upward departure from the maximum statutory sentence is unconstitutional under a guideline system unless the underlying facts have been found by a jury or admitted by the defendant." *Id*. at 821–22 (citing *Blakely*, 542 U.S. at 296). The Court in *Blakely* "clarified that 'the [relevant] 'statutory maximum' . . .  is the maximum sentence a judge may impose

solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.'" *Id*. at 823 (quoting *Blakely*, 542 U.S. at 303). We have previously recognized that "[t]he constitutional rule of criminal procedure established in *Blakely* is only available to defendants whose criminal cases were not yet final at the time the decision was issued." *Id*. (citing *United States v. Stoltz*, 149 F. App'x. 567, 569 (8th Cir. 2005); *United States v. Price*, 400 F.3d 844, 849 (10th Cir. 2005); *Schardt v. Payne*, 414 F.3d 1025, 1038 (9th Cir. 2005); *United States v. Phillips*, 109 F. App'x 627, 628 (4th Cir. 2004); *In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004)). According to this court, "[w]hen a Supreme Court decision results in a 'new rule' of criminal procedure, that rule applies to all criminal cases still pending on direct review, but, as to convictions that are already final, the rule applies only in limited circumstances." *Id*. (internal quotations and citations omitted).

In *Losh*, we determined that the Minnesota Supreme Court "correctly concluded that the retroactivity issue is governed by the Supreme Court decisions in *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004), *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), and *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987)." *Id*. In those precedents, the Court "clearly established that '[a] state conviction and sentence become final for purposes of retroactivity analysis *when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied*.'" *Id*. (quoting *Caspari v. Bohlen*, 510 U.S. 383, 391 (1994)) (emphasis added); *see also Griffith*, 479 U.S. at 321 n.6 ("By 'final,' we mean a case in which a *judgment of conviction* has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.") (emphasis added).

*Losh* controls. Here, the Minnesota Court of Appeals, relying on the Minnesota Supreme Court's decision in *O'Meara II*, concluded that

> [O'Meara's] case was final before *Blakely* was decided. In *O'Meara* [*II*], the Minnesota Supreme Court determined that [O'Meara's] case became final on August 6, 2000, almost four years prior to *Blakely*. [679 N.W.2d at 340]. "[A] case is pending until such time as the availability of direct appeal has been exhausted, the time for a petition for certiorari has elapsed or a petition for certiorari with the Supreme Court has been filed and finally denied." *Id*. at 339. The court found that [O'Meara's] appeal period expired on August 6, 2000 because he failed to perfect a direct appeal. *Id*. at 340.

*O'Meara III*, 2005 WL 3527124, at \*4. In turn, just as in *Losh*, the Minnesota Supreme Court in *O'Meara II* "reasonably applied" the precedent of *Teague* and *Griffith* in determining that O'Meara's conviction became final on August 6, 2000—the date his period of direct appeal expired. 592 F.3d at 823–24 (stating that "[t]he supreme court reasonably applied that precedent when it concluded that Losh's conviction and sentence had 'become final the date her period of direct appeal expired' because she had failed to seek direct review within the 90 day period prescribed by Minn. R. Crim. P. 28.02, subdiv. 4(3)").

As in *Losh*, the Minnesota Court of Appeals "concluded that [O'Meara] was not entitled to appeal [his] sentence on the basis of *Blakely* because the date on which [his] period of direct appeal expired and [his] conviction and sentence became final ([August 6, 2000]) preceded the date on which *Blakely* was decided (June 24, 2004)." 592 F.3d at 824. We explained in *Losh* that "[t]he Supreme Court has yet to consider whether *Blakely* applies retroactively to cases that became final before it was decided" and that, as a result, where "no clearly established federal law therefore exists, § 2254(d)(1) affords no grounds for disturbing the supreme court's conclusion." *Id*.

Additionally, we reject O'Meara's argument that his conviction was no longer "final" after the Minnesota Supreme Court's decision in May 2004 because his original sentence was no longer in existence. The Minnesota Court of Appeals ruled that O'Meara's "case was final" on August 6, 2000, because O'Meara was not being resentenced under a different statute in 2004, but rather was just "having the same statutory sentence reduced." *O'Meara III*, 2005 WL 3527124, at *3. This was not an unreasonable application of clearly established federal law because, as the district court, adopting the magistrate judge's report and recommendation, recognized, "no Supreme Court case directly addresses whether resentencing after collateral review renders a previously final conviction pending for the purpose of applying a new rule of federal constitutional criminal procedure." *See also Losh*, 592 F.3d at 825 ("Neither the Supreme Court nor any federal court of appeals has considered whether state law governs the characterization of a type of state appellate review for purposes of retroactivity analysis.").

Therefore, we hold that the Minnesota Court of Appeals's decision that O'Meara's conviction became final before *Blakely* was decided is not contrary to, or an unreasonable application of, federal law.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

———————————————————

-11-